# AMERICAN LAND COMPANY *v.* ZEISS.

CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR
THE NINTH CIRCUIT.

No. 230. Argued October 14, 17, 1910.—Decided January 3, 1911.

The general welfare of society is involved in the security and registry of titles to real estate, and those subjects are within the police power of the State.

A State, in the exercise of its inherent power to legislate in regard to title to the soil within its confines, may, without violating the Federal Constitution, require parties owning and in possession of land to establish title by judicial proceedings before properly constituted tribunals, and this power extends to non-resident owners of land who may be brought before such tribunals by publication.

A State possesses, and, after such a disaster to a community as befell San Francisco, California, by fire and earthquake in 1906, in which nearly all the public records of registered titles to real estate were destroyed, may exercise, the power to remedy the confusion and uncertainty arising from the catastrophe.

Undisclosed and unknown claimants are as dangerous to the stability of titles to real estate as other classes, and they are not deprived of their property without due process of law if compelled to establish their titles by judicial proceeding before a properly constituted tribunal on adequate published notice, if given an opportunity to be heard and properly protected in case of fraud.

A state statute, passed after such a catastrophe as visited San Francisco in 1906 for the purpose of reëstablishing titles to real estate, which permits an action for that purpose to be brought by parties who are themselves or by those holding under them, in actual and peaceable possession of the property described in the summons, and which requires the plaintiff to make affidavit before the summons is issued that he does not know and has never been informed of any adverse claimants not named in the summons, and also requires summons to be published at least once a week for two months, posted on each parcel of the property, and to be recorded and prop-

erly indexed in the recorder's office, and served upon all claimants whose names and whereabouts could be ascertained, gives an adequate opportunity to all persons interested in the property to establish their rights and does not deprive unknown claimants of their property without due process of law.

The Fourteenth Amendment does not operate to deprive the States of their lawful power; the due process clause of that Amendment only restrains such exertions of power as are so unreasonable and unjust as to impair or destroy fundamental rights and, therefore, not really within lawful power of the State.

This court in determining the constitutionality of a state statute is bound by the construction given to it by the highest court of the State and will treat it as exacting whatever the state court has declared that it exacts either expressly or by implication.

In determining the constitutionality of a state statute under the due process clause, the criterion is not whether any injury to an individual is possible, but whether the requirements as to notice and opportunity to protect property rights affected are just and reasonable.

It being within the power of the State to determine how title to real estate shall be proved, it is also within the legislative competency of that State to establish the method of procedure.

Due process of law requires that there shall be jurisdiction of, and notice to, the parties, and opportunity to be heard; and, subject to these conditions, the State has power to regulate procedure. *Twining* v. *New Jersey,* 211 U. S. 78.

The California statute, c. 59, of June 16, 1906, to establish titles in case of loss of public records, passed after the earthquake and fire of April, 1906, as construed by the highest state court, is within the legislative power of the State, provides adequate notice and protection to unknown claimants, affords opportunity to be heard and is not unconstitutional under the Fourteenth Amendment as depriving unknown claimants of their property without due process of law.

As a result of the conditions caused in San Francisco by the great calamity of earthquake and fire, which befell that city in April, 1906, an extraordinary session of the legislature of California was convoked. One reason stated for the call was the necessity of providing for restoring the record title to land in San Francisco. An act to ac-

complish that purpose became a law upon its approval on June 16, 1906. It is copied on the margin.[1]

The Circuit Court of Appeals has certified the issues involved in a pending cause, the determination of which rests upon the validity of the statute just referred to. The pertinent facts arising on the record of the cause are stated in the certificate, and are hereafter set forth. The purpose contemplated is to obtain instructions as to

---

[1] Chapter 59.

An act to provide for the establishment and quieting of title to real property in case of the loss or destruction of public records.

[Approved June 16, 1906.]

The people of the State of California, represented in Senate and Assembly, do enact as follows:

SEC. 1. Whenever the public records in the office of a county recorder have been, or shall hereafter be, lost or destroyed, in whole or in any material part, by flood, fire or earthquake, any person who claims an estate of inheritance, or for life in, and who is by himself or his tenant, or other person, holding under him, in the actual and peaceable possession of any real property in such county, may bring and maintain an action *in rem* against all the world, in the Superior Court for the county in which such real property is situate, to establish his title to such property and to determine all adverse claims thereto. Any number of separate parcels of land claimed by the plaintiff may be included in the same action.

SEC. 2. The action shall be commenced by the filing of a verified complaint, in which the party so commencing the same shall be named as plaintiff, and the defendants shall be described as "all persons claiming any interest in, or lien upon the real property herein described, or any part thereof," and shall contain a statement of the facts enumerated in section one of this act, a particular description of such real property, and a specification of the estate, title, or interest of the plaintiff therein.

SEC. 3. Upon the filing of the complaint a summons must be issued under the seal of the court, which shall contain the name of the court and county in which the action is brought, the name of the plaintiff and a particular description of the real property involved, and shall be directed to "all persons claiming any interest in, or lien upon the

whether the act in question "is violative of the Fourteenth Amendment of the Constitution of the United States," and whether by virtue of a decree rendered by the Su-

---

real property herein described, or any part thereof," as defendants, and shall be substantially in the following form:

"In the Superior Court of the State of California, in and for the County (or City and County) of ———.

Action No. —.

——— ———, Plaintiff,

vs.

All Persons Claiming Any Interest in, or Lien upon the Real Property Herein Described, or Any Part Thereof, Defendants.

The People of the State of California, to all persons claiming any interest in, or liens upon, the real property herein described, or any part thereof, defendants, Greetings:

You are hereby required to appear and answer the complaint of ——— ———, plaintiff, filed with the clerk of the above entitled court and county, within three months after the first publication of this summons, and to set forth what interest or lien, if any, you have in or upon that certain real property or any part thereof, situated in the county (or city and county) of ———, State of California, particularly described as follows: (Here insert description.)

And you are hereby notified that, unless you so appear and answer, the plaintiff will apply to the court for the relief demanded in the complaint, to wit: (Here insert a statement of the relief so demanded.)

Witness my hand and the seal of said court, this — day of ———, A. D. ———.

[SEAL]                              ——— ———, Clerk."

SEC. 4. The summons shall be published in a newspaper of general circulation, published in the county in which the action is brought. The newspaper in which such publication is to be made shall be designated by an order of the court or a judge thereof to be signed and filed with the clerk. No other order for the publication of the summons shall be necessary, nor shall any affidavit therefor be required, nor need any copy of the complaint be served, except as hereinafter required. The summons shall be published at least once a week for a period of two months, and to each publication thereof shall be appended a memorandum in substance as follows:

"The first publication of this summons was made in ——— (here

perior Court of the city and county of San Francisco, referred to in the recital of facts, the American Land Company "has been deprived of its property without due process of law."

---

insert the name) newspaper on the — day of ——— A. D. ———; (inserting the date)."

And if the affidavit provided for in section five of this act discloses the name of any person claiming an interest in the property, or a lien thereon adverse to the plaintiff, that fact together with the name and address (if given) of said person shall be stated in a memorandum to be appended to the summons in substance as follows:

"The following persons are said to claim an interest in, or lien upon said property adverse to plaintiff, (giving their names and addresses as above provided). A copy of the summons, together with a copy of the foregoing memoranda, shall be posted in a conspicuous place on each parcel of the property described in the complaint within fifteen days after the first publication of the summons."

SEC. 5. At the time of filing the complaint, the plaintiff shall file with the same his affidavit, fully and explicitly setting forth and showing (1) the character of his estate, right, title, interest or claim in, and possession of the property, during what period the same has existed and from whom obtained; (2) whether or not he has ever made any conveyance of the property, or any part thereof, or any interests therein, and if so, when and to whom; also a statement of any and all subsisting mortgages, deeds of trust, and other liens thereon; (3) that he does not know and has never been informed of any other person who claims or who may claim, any interest in, or lien upon, the property or any part thereof, adversely to him, or if he does know or has been informed of any such person, then the name and address of such person. If the plaintiff is unable to state any one or more of the matters herein required, he shall set forth and show, fully and explicitly, the reasons for such inability. Such affidavit shall constitute a part of the judgment roll. If the plaintiff be a corporation, the affidavit shall be made by an officer thereof. If the plaintiff be a person under guardianship the affidavit shall be made by his guardian.

SEC. 6. If the said affidavit discloses the name of any person claiming any interest in, or lien upon, the property adverse to the plaintiff, the summons shall also be personally served upon such person if he can be found within the State, together with a copy of the complaint and a copy of said affidavit during the period of the publications of the summons; and to the copy of the summons delivered to any such per-

The following are the facts recited in the certificate:

"The appellant as complainant in the court below brought its bill in equity against the appellee to remove

---

son there shall be appended a copy of the memoranda provided for in section four hereof.

If such person resides out of this State a copy of the summons, memoranda, complaint and affidavit shall be within fifteen days after the first publication of the summons deposited in the United States post office, enclosed in a sealed envelope, postage prepaid, addressed to such person at the address given in the affidavit, or if no address be given therein, then at the county seat at the county in which the action is brought. If such person resides within this State and could not with due diligence be found within the State, within the period of the publication of the summons, then said copies aforesaid shall be mailed to him as above provided forthwith upon the expiration of said period of publication.

SEC. 7. Upon the completion of the publication and posting of the summons and its service upon and mailing to the person, if any, upon whom it is hereby directed to be so specially served the court shall have full and complete jurisdiction over the plaintiff and the said property and of the person of every one claiming any estate, right, title or interest, in or to, or lien upon, said property, or any part thereof, and shall be deemed to have obtained the possession and control of said property for the purposes of the action, and shall have full and complete jurisdiction to render the judgment therein which is provided for in this act.

SEC. 8. At any time within three months from the first publication of the summons, or within such further time, not exceeding thirty days, as the court may, for good cause, grant, any person having or claiming any estate, right, title or interest, in or to, or lien upon, said property, or any part thereof, may appear and make himself a party to the action by pleading to the complaint. All answers must be verified and must specifically set forth the estate, right, title, interest, or lien, so claimed.

SEC. 9. The plaintiff must, at the time of filing the complaint, and every defendant claiming any affirmative relief must, at the time of filing his answer, record in the office of the recorder of the county in which the property is situated, a notice of the pendency of the action containing the object of the action or defense, and a particular description of the property affected thereby; and the recorder shall record the same in a book devoted exclusively to the recordation of such notices

a cloud from its title to real property and to quiet its title thereto. The bill alleges on April 10, 1908, and at all the times prior thereto referred to in the bill, George H. Lent

and shall enter, upon a map or plat of the parcels of land, to be kept by him for that purpose, on that part of the map or plat representing the parcel or parcels so described a reference to the date of the filing of such notice and, when recorded, to the book and page of the record thereof.

SEC. 10. No judgment in any such action shall be given by default; but the court must require proof of the facts alleged in the complaint and other pleadings.

SEC. 11. The judgment shall ascertain and determine all estates, rights, titles and interests and claims in and to said property and every part thereof, whether the same be legal or equitable, present or future, vested or contingent, or whether the same consist of mortgages or liens of any description and shall be binding and conclusive upon every person who, at the time of the commencement of the action, had or claimed any estate, right, title or interest in or to said property, or any part thereof, and upon every person claiming under him by title subsequent to the commencement of the action. A certified copy of the judgment in such action shall be recorded in the office of the recorder of the county in which said action was commenced, and any party or the successor in interest of any party to said action may, at his option, file for record in the office of the recorder of such county the entire judgment roll in said action.

SEC. 12. Except as herein otherwise provided, all the provisions and rules of law relating to evidence, pleading, practice, new trials and appeals, applicable to other civil actions, shall apply to the actions hereby authorized.

At any time after the issuance of the summons, any party to the action may take depositions therein, in conformity to law, upon notice to the adverse party sought to be bound by such depositions, and who have appeared in the action (if any) and upon notice filed with the clerk. The depositions may be used by any party against any other party giving or receiving the notice (except the clerk) subject to all just exceptions.

SEC. 13. The clerk shall number consecutively in a distinct series all actions hereby authorized, and shall keep an index and register thereof devoted exclusively to such actions.

SEC. 14. Whenever judgment in an action hereby authorized shall have been entered as to any real property, no other action relative to

and Mary G. Coggeshall were severally the owners in fee simple of two adjacent lots of land in San Francisco, which lots are described in the bill. The lots and others similarly situated are known as City Slip and Water Lots. Under the provisions of an act of the legislature of the State of California, approved March 5, 1851 (Stats. of 1851, page 764), the State leased this property to the city of San Francisco for the term of ninety-nine years. The appellee is alleged to be the owner of the unexpired portion of this lease as successor in interest of the city's right, and to be entitled to the possession thereof until March 26, 1950. The bill alleges that the appellee has no right whatever other than this right of possession and occupation; that notwithstanding the premises, the appellee claims to be the owner in fee simple of said lands under a judgment and decree of the Superior Court of the State of California in and for the city and county of San Francisco, made and entered December 19, 1906, in a proceeding entitled 'Louis Zeiss, plaintiff, vs. All persons claiming any interest in, or lien upon the real property herein

the same property or any part thereof maintained under this act shall be tried until proof shall first have been made to the court that all persons who appeared in the first action, or their successors in interest, have been personally served with the papers mentioned in section 6 of this act, either within or without this State, more than one month before the time to plead expired.

SEC. 15. An executor, administrator or guardian or other person holding the possession of property in the right of another may maintain as plaintiff, and may appear and defend in the action herein provided for.

SEC. 16. The word "county" whenever used in this act includes and applies to a consolidated city and county.

SEC. 17. The remedies provided for by this act shall be deemed cumulative, and in addition to any other remedy now or hereafter provided by law for quieting or establishing title to real property.

SEC. 18. All actions authorized hereby must be commenced before July 1st, 1909.

SEC. 19. This act shall be in force thirty days after its passage.

described, or any part thereof, defendants;' that said proceeding was brought under an act of the legislature of the State of California, entitled 'An Act to provide for the establishment and quieting of title to real property in case of the loss or destruction of public records,' approved June 16, 1906; that said claim of the appellee under said decree is without right, and said decree is void; that in the complaint in that proceeding the appellee, after properly setting forth the destruction of the records, alleged that he was the owner in fee simple, free of incumbrance, of the lands which are described in the bill in this case, and that he prayed for a decree of the Superior Court adjudging his title to be as set forth by him; that at the time of filing his complaint he filed his affidavit setting forth the character of the estate, the source of his title, his possession, and stating that he had made no conveyance of the land, that there were no liens on it, and that he did not know and that he had never been informed of any other person who claimed or may claim any interest or lien upon the property, or any part thereof, adversely to him. The affidavit contained no averment that inquiry of any kind had been made to ascertain whether such adverse claim did exist. It is shown in the bill that in said proceeding under said act of the legislature, summons was published in the Law Recorder for the space of two months, and was also posted on the land, and that after the period of publication of the summons the appellee herein obtained a decree of the court as prayed for by him. The bill further alleges that although the appellant's grantors were at all times citizens and residents of California, not seeking to evade but ready to accept service of summons, and easily reached for that purpose, no service was made upon them, nor did they in any way receive notice of the pendency of the action, nor did they gain any knowledge of the existence of the decree until more than a year after its entry. A demur-

rer was interposed to the bill in the court below for want of equity, which demurrer was sustained by the court and the bill was dismissed."

*Mr. C. Irving Wright,* with whom *Mr. Charles Page, Mr. Edward J. McCutchen* and *Mr. Samuel Knight* were on the brief, for appellant:

To constitute due process of law in judicial proceedings involving adversary rights of property there must be actual and adequate notice, giving a real and substantial, and not merely a formal and illusory, opportunity to controvert the plaintiff's allegations. *Roller* v. *Holly,* 176 U. S. 398.

A judgment in such cases can conclude the rights of parties and privies only. This in an immutable principle of justice. *Hollingsworth* v. *Barbour,* 4 Pet. 466, 475.

*Res judicata* according to the law of any civilized country is that the court after argument and consideration, came to a decision on a contested matter. *Jenkins* v. *Robertson,* 1 Scotch App. 117; *Tregea* v. *Modesto,* 164 U. S. 179.

Such actions differ among other things from actions which are strictly *in rem* in that the interest of the defendant is alone sought to be affected, that citation to him is required and that judgment therein is only conclusive between the parties.

In proceedings termed *quasi in rem* there is a suit against a personal defendant by name. *The Ad. Hine,* 4 Wall. 571, and see *Freeman* v. *Alderson,* 119 U. S. 185; *Mayor* v. *Shareholders,* 6 A. C. House of Lords, 393; *Fisher* v. *Lane,* 3 Wils. 297.

No reasonable notice can be imparted by a publication not naming or describing the person to be cited and not making any allegation against him. The naming of the party is "of the very life of the notice."

The act is invalid, even within the extreme doctrine of the Massachusetts case, for not requiring any effort to

ascertain claimants before concluding the rights of those who are unnotified because alleged to be unknown. *Tyler* v. *The Judges,* 175 Massachusetts, 71; *State* v. *Guilbert,* 56 Ohio St. 575; *People* v. *Simon,* 176 Illinois, 165; *State* v. *Westfall,* 85 Minnesota, 437; *Dewey* v. *Kimball,* 89 Minnesota, 454.

Proceedings under the act cannot, without violation of the principles of natural justice, be brought within the class of cases where constructive service is permissible. Cases *supra* and *Bruce* v. *Watt,* 1 M. & G. 1; 89 E. C. L. 612; but see also *Mayor* v. *Cox,* L. R. 2 H. L. 239; *Hart* v. *Samson,* 110 U. S. 151.

While a court may be empowered to determine the title to real estate within its limits, as against a non-resident defendant, notified only by publication, this, however, will not justify a pretended notice against natural justice. *Arndt* v. *Griggs,* 134 U. S. 316; *Meyer* v. *Kuhn,* 65 Fed. Rep. 705.

Only conflicting titles can be adjudicated upon constructive service even as against named non-residents. The McEnerney Act, however, attempts to conclude nonadversary interests. *Remer* v. *McKay,* 54 Fed. Rep. 432. It does not provide reasonable constructive service upon claimants who have not been ascertained, even if it could be conceived that it does require any precautions to ascertain claimants.

No reasonable notice can be imparted by a publication not naming or describing the person to be cited, and not making any allegation against him. *Pennsylvania Co.* v. *Sears,* 136 Indiana, 460; *Fanning* v. *Krapft,* 61 Iowa, 417; *Skelton* v. *Sacket,* 91 Missouri, 377; *Corrigan* v. *Schmidt,* 126 Missouri, 304; *Detroit* v. *Detroit City Ry. Co.,* 54 Fed. Rep. 1; *Netzorg* v. *Green,* 26 Tex. Civ. App. 119; *Ohlmann* v. *Clarkson,* 120 S. W. Rep. 1155.

The declaration of rights upon mere *ex parte* applications is not the exercise of judicial power. The property

of appellant cannot be transferred to appellee except by the exercise of judicial power. Austin, Philosophy of Jurisprudence, § 1036; Bouvier's Dictionary; *Tregea* v. *Modesto*, 164 U. S. 179; *Cushing* v. *Laird*, 107 U. S. 69.

If the complaint does not show a controversy, jurisdiction cannot be subsequently acquired. No anticipation of defenses or defendants suffices. *Blagge* v. *Moore*, 6 Tex. Civ. App. 359; *Third St. R. R. Co.* v. *Lewis*, 173 U. S. 457; *Attorney General* v. *Avon*, 3 De G., J. & S. 637; 333 L. J., Ch. 172; *Bradstreet* v. *Neptune Ins. Co.*, 3 Sumn. 600; *Case of Prohibitions*, 12 Coke's Rep. 63; Blackstone, Book III, p. 25; Montesquieu, L'Esprit des Lois, livre xi, c. vi.

The court does not go to meet the question. It waits for the question to come to it. Bryce's Am. Com. 252; Miller on Constitution, p. 348; *Georgia* v. *Stanton*, 6 Wall. 50; *De Camp* v. *Archibald*, 35 N. E. Rep. 1056, 1058; *In re Canadian Northern Ry.*, 7 Fed. Rep. 653; *Brewington* v. *Lowe*, 1 Indiana, 21; *Fuller* v. *Colfax County*, 14 Fed. Rep. 177, 178; *Lord* v. *Veazie*, 8 How. 255; *Livingston* v. *D'Orgenoy*, 108 Fed. Rep. 469.

*Mr. Otto tum Suden* for appellee.

*Mr. Garret W. McEnerney*, with whom *Mr. Walter Rothchild* was on the brief, by leave of the court as *amici curiæ* in support of the validity of the McEnerney Act, for appellee.

MR. CHIEF JUSTICE WHITE, after making the foregoing statement, delivered the opinion of the court.

Although not objecting to an answer to the questions, nevertheless the American Land Company, which was the appellant below, suggests at bar a want of power to reply to the questions for a twofold reason: First, because

the certificate on its face indicates that the court below was not in a state of mind which required the instruction of this court, but was merely desirous of provoking a direct decision by this court, to avoid the delay and the public inconvenience which otherwise might result. Second, because the certificate is so broad as simply to refer the whole case to this court for decision instead of presenting definite propositions of law for solution. While it may be that these suggestions find possible support, considering the record in a detached way, we think when the certificate is considered as a whole and the subject with which it deals is properly weighed the suggestions are without merit. We therefore pass to a consideration of the questions propounded.

It is apparent that the substantial considerations involved in the questions certified are embraced in the following, *a*, the authority of the State to deal with the subject with which the statute is concerned; *b*, upon the hypothesis of the existence of power, the sufficiency of the safeguards provided in the statute; *c*, upon the like hypothesis the adequacy of the proceedings had in the particular cause with which the certificate deals. We shall consider these subjects separately.

*As to the power of the State.*

The conditions which led to the legislation in question were stated by the Supreme Court of California in *Title & Document Restoration Co.* v. *Kerrigan, Judge,* 150 California, 289, 305. The court said:

"It is also a matter of common knowledge that in the city and county of San Francisco, at least, if not in other counties, the disaster of April last worked so great a destruction of the public records as to make it impossible to trace any title with completeness of certainty. That some provision was necessary to enable the holders and owners of real estate in this city to secure to themselves such evidence of title as would enable them, not only to

defend their possession, but to enjoy and exercise the
equally important right of disposition, is clear."

. As it is indisputable that the general welfare of society
is involved in the security of the titles to real estate and
in the public registry of such titles, it is obvious that the
power to legislate as to such subjects inheres in the very
nature of government. This being true, it follows that
government possesses the power to remedy the confusion
and uncertainty as to registered titles arising from a dis-
aster like that described by the court below. We might
well pursue no further the subject of the power of the
State to enact the law in question, and thus leave its au-
thority to depend upon the demonstration necessarily re-
sulting from the obvious considerations just stated. As,
however, the question of power is intimately interwoven
with the sufficiency of the procedure adopted, and as a
clear comprehension of the scope of the power will serve
to elucidate the question of procedure, we shall briefly
refer to some of the leading cases by which the elementary
doctrine of power over the subject of titles to real estate
and the application of that doctrine to a case like the
one in hand is settled beyond question. That a State has
the power, generally speaking, to provide for and protect
individual rights to the soil within its confines and de-
clare what shall form a cloud on the title to such soil was
recognized in *Clark* v. *Smith*, 13 Pet. 195. So, also, it is
conclusively established that when the public interests
demand the law may require even a party in actual pos-
session of land and claiming a perfect title to appear be-
fore a properly constituted tribunal and establish that
title by a judicial proceeding. Such was the method em-
ployed by the United States in settling as between itself
and claimants under Mexican grants the title to property
in California. *Barker* v. *Harvey*, 181 U. S. 481; *Mitchell* v.
*Furman*, 180 U. S. 402; *Botiller* v. *Dominguez*, 130 U. S.
238; *More* v. *Steinbach*, 127 U. S. 70.

The question of what authority a State possesses over titles to real estate, and what jurisdiction over the subject it may confer upon its courts, received much consideration in *Arndt* v. *Griggs*, 134 U. S. 316. It was there held that, even as to ordinary controversies respecting title to land arising between rival claimants, the State possessed the power to provide for the adjudication of titles to real estate not only as against residents, but as against non-residents, who might be brought into court by publication. In the course of the opinion the court said (p. 320):

"It [the State] has control over property within its limits; and the condition of ownership of real estate therein, whether the owner be stranger or citizen, is subject to its rules concerning the holding, the transfer, liability to obligations, private or public, and the modes of establishing titles thereto. It cannot bring the person of a non-resident within its limits—its process goes not out beyond its borders—but it may determine the extent of his title to real estate within its limits; and for the purpose of such determination may provide any reasonable, methods of imparting notice. The well-being of every community requires that the title to real estate therein shall be secure, and that there be convenient and certain methods of determining any unsettled questions respecting it. The duty of accomplishing this is local in its nature; it is not a matter of national concern or vested in the general government; it remains with the State; and as this duty is one of the State, the manner of discharging it must be determined by the State, and no proceeding which it provides can be declared invalid, unless it conflict with some special inhibitions of the Constitution, or against natural justice."

Manifestly, under circumstances like those here presented, the principle applies with equal force in the case of unknown claimants. Undisclosed and unknown claim-

ants are, to say the least, as dangerous to the stability
of titles as other classes. This principle received recog-
nition and was applied in *Hamilton* v. *Brown*, 161 U. S.
256, where it was held to be competent for a State to make
provision for promptly ascertaining, by appropriate ju-
dicial proceedings, who has succeeded to property upon
the death of a person leaving such property within the
State. It was said (p. 275):

"If such proceedings are had, after actual notice by
service of summons to all known claimants, and construct-
ive notice by publication to all possible claimants who
are unknown, the final determination of the right of suc-
cession, either among private persons, as in the ordinary
administration of estates, or between all persons and the
State, as by inquest of office or similar process to deter-
mine whether the estate has escheated to the public, is
due process of law; and a statute providing for such pro-
ceedings and determination does not impair the obligation
of any contract contained in the grant under which the
former owner held, whether that grant was from the State
or from a private person."

The application of the doctrine of governmental power,
as just stated, to a condition like the one here in question
was aptly pointed out by the Supreme Court of Illinois
in *Bertrand* v. *Taylor*, 87 Illinois, 235, where, in consid-
ering the Illinois Burnt Record Act, the court said:

"It was demanded as a matter of safety in a great
emergency. It was not calculated to take any reasonable
being by surprise. It was known throughout the civi-
lized world that a large part of the city of Chicago had
been destroyed by fire and that the records of courts and
the records of deeds were all destroyed. This naturally
commanded the attention of all reasonable persons every-
where, and called upon them to attend and see what means
would be adopted to mitigate the evils and dangers in-
cident to the destruction. This legislation was not done

in a corner, but before the observation of a civilized world. We cannot doubt the power of the general assembly to pass the act."

The Supreme Court of California, in the *Kerrigan case,* *supra,* addressing itself to the same subject, pertinently observed (pp. 313, 314):

"Applying the principles which have led the courts in cases like *Arndt* v. *Griggs,* 134 U. S. 316, and *Perkins* v. *Wakeham,* 86 California, 580, to sustain judgments quieting titles against non-residents upon substituted service; why should not the legislature have power to give similar effect to such judgments against unknown claimants where the notice is reasonably full and complete? The validity of such judgments against known residents is based upon the ground that the State has power to provide for the determination of titles to real estate within its borders, and that, as against non-resident defendants or others, who cannot be served in the State, a substituted service is permissible, as being the only service possible. These grounds apply with equal force to unknown claimants. The power of the State as to titles should not be limited to settling them as against persons named. In order to exercise this power to its fullest extent, it is necessary that it should be made to operate on all interests, known and unknown. As was said by Holmes, C. J., in *Tyler* v. *Judges of the Court of Registration,* 175 Massachusetts, 71, in speaking of a statute which, in the particular under discussion, was similar to ours: 'If it does not satisfy the Constitution, a judicial proceeding to clear titles against all the world hardly is possible; for the very meaning of such a proceeding is to get rid of unknown as well as known claimants—indeed, certainty against the unknown may be said to be its chief end—and unknown claimants cannot be dealt with by personal service upon the claimant.' "

The power exerted by the act being then clearly within

the legislative authority, we are brought to consider
whether the lawful power was manifested in such a man-
ner as to cause the act to be repugnant to the Fourteenth
Amendment. And this brings us to the second proposi-
tion heretofore stated, viz.:

*The adequacy of the safeguards which the statute provides.*

As no complaint is made concerning the provisions of
the statute relating to the designation of and notice to
known claimants, we put that subject out of view and
address ourselves to the provisions relating to unknown
claimants or claims. The action which the statute au-
thorizes may be brought by "Any person who claims an
estate of inheritance, or for life in, and who is by himself
or his tenant, or other person, holding under him, in the
actual and peaceable possession of any real property"
situated in a county where "the public records in the
office of a county recorder have been lost or destroyed, in
whole or in any material part, by flood, fire or earth-
quake." In the caption of the complaint the statute
requires that the defendants shall be described as "all
persons claiming any interest in or lien upon the real
property herein described, or any part thereof." The sum-
mons is required to contain a description of the property
affected by the suit and to be directed to "all persons
claiming any interest in or lien upon the real property
herein described, or any part thereof." The summons is
to be published at least once a week for two months, and
the defendants are commanded to appear and answer
within three months after the first publication of the
summons. A copy of the summons is required to be
posted in a conspicuous place on each separate parcel of
the property described in the complaint within fifteen
days after the first publication of the summons. At the
time of filing the complaint a notice of the pendency of
the action, giving among other things a particular de-
scription of the property affected thereby, must be re-

corded in the office of the recorder of the county in which the property is situated, and it is made the duty of the recorder to enter, "upon a map or plat of the parcels of land, to be kept by him for that purpose, on that part of the map or plat representing the parcel or parcels so described a reference to the date of the filing of such notice and, when recorded, to the book and page of the record thereof." In considering the statute we are bound by the construction affixed to it by the Supreme Court of the State, and therefore treat as embraced within its terms that which the highest court of the State has declared the statute exacts, either expressly or by necessary implication. In the *Kerrigan case, supra,* it was held that the result of the provisions of the statute was "to require the complainant to designate and to serve as known claimants all whom, with reasonable diligence, he could ascertain to be claimants," a construction which, in effect declared that the statute prohibited the omission of a known claim or claimant, upon the conception that the rights of such claim or claimant would be foreclosed by the general designation and notice prescribed for unknown claimants. And in *Hoffman* v. *Superior Court,* 151 California, 386, where the doctrine of the *Kerrigan case* was reiterated and applied, the court, after holding that the statute requires the plaintiff in his affidavit to allege in terms "that he does not know and has never been informed" of any adverse claimants whom he has not specifically named, pointed out that failure of the plaintiff to make inquiry or to avail himself of knowledge which would be imputed to him because of facts sufficient to put him on inquiry as to the existence of adverse claims would be available "in any subsequent attack upon the decree, upon the ground that there was extraneous fraud of the plaintiff in making a false affidavit to obtain jurisdiction."

It is to be borne in mind that it has been settled (*Griffith* v. *Connecticut,* 218 U. S. 563, and cases cited) that

VOL. CCXIX—5

the Fourteenth Amendment does not operate to deprive the States of their lawful power, and of the right in the exercise of such power to resort to reasonable methods inherently belonging to the power exerted. On the contrary, the provisions of the due process clause only restrain those arbitrary and unreasonable exertions of power which are not really within lawful state power, since they are so unreasonable and unjust as to impair or destroy fundamental rights.

It is to be observed that the statute not only requires a disclosure by the plaintiff of all known claimants, but moreover at the very outset contains words of limitation that no one not in the actual and peaceable possession of property can maintain the action which it authorizes. No person can therefore be deprived of his property under the statute unless he had not only gone out of possession of such property and allowed another to acquire possession, or if he had a claim to such property or an interest therein, had so entirely failed to disclose that fact as to enable a possessor to truthfully make the affidavit which the statute exacts of a want of all knowledge of the existence of other claimants than as disclosed in his affidavit. Besides, it is to be considered that the statute, as construed by the California court, imposed upon the one in possession seeking the establishment of an alleged title the duty to make diligent inquiry to ascertain the names of all claimants. Instead, therefore, of the statute amounting to the exertion of a purely unreasonable and arbitrary power, its provisions leave no room for that contention. On the contrary, we think the statute manifests the careful purpose of the legislature to provide every reasonable safeguard for the protection of the rights of unknown claimants and to give such notice as under the circumstances would be reasonably likely to bring the fact of the pendency and the purpose of the proceeding to the attention of those interested. To argue that the provi-

sions of the statute are repugnant to the due process clause because a case may be conceived where rights in and to property would be adversely affected without notice being actually conveyed by the proceedings is in effect to deny the power of the State to deal with the subject. The criterion is not the possibility of conceivable injury but the just and reasonable character of the requirements, having reference to the subject with which the statute deals. The doctrine on this subject was clearly expressed by the Court of Appeals of New York in *In re Empire City Bank*, 18 N. Y. 199, 215, where, speaking of the right of a State to prescribe in a suitable case for constructive service, it was said:

"Various prudential regulations are made with respect to these remedies, but it may possibly happen, notwithstanding all these precautions, that a citizen who owes nothing, and has done none of the acts mentioned in the statutes, may be deprived of his estate without any actual knowledge of the process by which it has been taken from him. If we hold, as we must, in order to sustain this legislation, that the constitution does not positively require personal notice in order to constitute a legal proceeding due process of law, it then belongs to the legislature to determine in the particular instance whether the case calls for this kind of exceptional legislation and what manner of constructive notice shall be sufficient to reasonably apprise the party proceeded against of the legal steps which are taken against him."

And in accordance with this view, the Supreme Court of California, in the *Kerrigan case*, pointed out that the statute furnished all the safeguards for which, in reason, it could have been expected to provide consistently with the condition dealt with. The court said (p. 312):

"Where, as here, the summons describing the nature of the action, the property involved, the name of the plaintiff, and the relief sought, is posted upon the prop-

erty, and is published in a newspaper for two months, and a '*lis pendens*' containing the same particulars is recorded in the recorder's office and entered upon the recorder's map of the property, we cannot doubt that, so far as concerns the possible claimants who are not known to the plaintiff, the notice prescribed by the act is as complete and full as, from the nature of the case, could reasonably be expected."

The case of *Ballard* v. *Hunter*, 204 U. S. 241, is instructive on this feature of the case. In that case a judgment of the Circuit Court of Arkansas was affirmed which sustained the validity of a sale of lands for levee taxes. The Arkansas statute authorized the proceedings which had resulted in the sale, upon constructive publication against non-residents and unknown owners. Lands of Josephine Ballard were sold under the statutory proceeding, she not having knowledge of the existence of the suit or of the fact that the taxes had been assessed against her property. In the course of the opinion the court, speaking through Mr. Justice McKenna, said (p. 261):

"It is said, however, that Josephine Ballard was not made a defendant in the suit, though the records of the county showed that she was an owner thereof. But the statute provided against such an omission. It provided that the proceedings and judgment should be in the nature of proceedings *in rem*, and that it should be immaterial that the ownership of the lands might be incorrectly alleged in the proceedings. We see no want of due process in that requirement, or what was done under it. It is manifest that any criticism of either is answered by the cases we have cited. The proceedings were appropriate to the nature of the case.

" It should be kept in mind that the laws of a State come under the prohibition of the Fourteenth Amendment only when they infringe fundamental rights. A law must be framed and judged of in consideration of the practical

affairs of man. The law cannot give personal notice of its provisions or proceedings to every one. It charges every one with knowledge of its provisions; of its proceedings it must, at times, adopt some form of indirect notice, and indirect notice is usually efficient notice when the proceedings affect real estate. Of what concerns or may concern their real estate, men usually keep informed, and on that probability the law may frame its proceedings; indeed, must frame them, and assume the care of property to be universal, if it would give efficiency to many of its exercises. This was pointed out in *Huling* v. *Kaw Valley Railway & Improvement Company,* 130 U. S. 559, where it was declared to be the 'duty of the owner of real estate, who is a non-resident, to take measures that in some way he shall be represented when his property is called into requisition; and if he fails to give notice by the ordinary publications which have been usually required in such cases, it is his misfortune, and he must abide the consequences.' It makes no difference, therefore, that plaintiffs in error did not have personal notice of the suit to collect the taxes on their lands or that taxes had been levied, or knowledge of the law under which the taxes had been levied."

While we are of opinion that the views just stated demonstrate the want of merit in the contention that the statute, because of the insufficiency of its requirements, was repugnant to the Fourteenth Amendment, a consideration of a provision of the general law of California, which by the construction of the Supreme Court of California is incorporated into the statute under consideration, would lead to the same result. Thus, in the *Hoffman Case,* 151 California, 386, 393, the court said:

"In this connection it is proper to say that in determining whether or not due process of law is afforded, other statutes applicable to the proceeding may be considered. The provisions of § 473 of the Code of Civil Procedure

apply in such cases. Any person interested in the property and having no actual notice of the decree, may come in at any time within a year after its rendition and by showing that he has not been personally served with process and stating facts constituting a good defense to the proceeding—that is, facts sufficient to show that he has a valid adverse interest in the property—he may have the decree vacated, as to him and be allowed to answer to the merits."

· The right conferred by § 473 of the code, it is to be observed, is an absolute right, although the section declares that the court may impose "such terms as may be just." *Holiness Church* v. *Metropolitan Church Association* (Cal. App.), 107 Pac. Rep. 633; *Gray* v. *Lawlor*, 151 California, 352.

Under this construction it might well be held, if it were necessary to do so, as establishing a rule of limitation which it was in the power of the State to prescribe, in view of the circumstances to which the limitation was made applicable. See *Tyler* v. *Judges*, 175 Massachusetts, 71, and *State* v. *Westfall*, 85 Minnesota, 437. See also Illinois cases concerning the power to fix a short period of limitation to meet a disaster like the one to which the statute in question relates, collected in *Gormley* v. *Clark*, 134 U. S. 346, 347.

These views dispose of all the contentions concerning the repugnancy of the statute to the Fourteenth Amendment which we think it necessary to separately consider. In saying this we are not unmindful of a multitude of subordinate propositions pressed in the voluminous brief of counsel and which were all in effect urged upon the Supreme Court of California in the *Kerrigan* and *Hoffman* cases and were in those cases adversely disposed of, and which we also find to be without merit. Some of them we briefly refer to. We do not think it is important to determine the precise nature of the action authorized by

the statute, since the method of procedure which was prescribed was within the legislative competency.  So, also, we do not deem it important to discuss what constitutes a judicial proceeding, since the statutory proceeding provided by the act was within the authority of the State to enact, and that it was judicial in character has been expressly determined by the court of last resort of the State. Indeed, not only these, but all the contentions proceed upon a misconception as to the legislative authority of the State and the effect thereon of the due process clause of the Constitution of the United States.  The error which all the propositions involve was pointed out in *Twining* v. *New Jersey*, 211 U. S. 78, where, speaking by Mr. Justice Moody, the court said:

Due process requires that the court which assumes to determine the rights of parties shall have jurisdiction (citing cases) and that there shall be notice and opportunity for hearing given the parties, (citing cases).  Subject to these two fundamental conditions, which seem to be universally prescribed in all systems of law established by civilized countries, this court has, up to this time, sustained all state laws, statutory or judicially declared, regulating procedure, evidence and methods of trial, and held them to be consistent with due process of law."

3. *The adequacy of the proceedings pursued in the case referred to in the certificate.*

As there is no claim that fraud, actual or constructive, was employed by Zeiss in obtaining the judgment complained of, and the proceedings conformed to the California statute, the considerations previously stated entirely dispose of this question.

It follows that both of the questions certified must be answered in the negative.

*And it is so ordered.*