*776
On Return to Remand 

DONALDSON, Judge.
Due process requires notice and an opportunity for a hearing appropriate to the nature of the case. This case raises an issue regarding whether C.M.L. (“the mother”), whose parental rights to J.D.L. (“the child”) were terminated by a judgment of the Marion Juvenile Court (“the juvenile court”), was adequately apprised of the hearing on the merits and, thus, whether she was afforded procedural due process guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, § 6, of the Alabama Constitution of 1901. Because we conclude that the judgment was entered in a manner inconsistent with due process, we reverse the judgment and remand the cause to the juvenile court.
On March 5, 2013, B.E.L. (“the father”), the father of the child, filed a petition to terminate the mother’s parental rights to the child in the juvenile court. In the petition, the father alleged that the mother had abused narcotics for years, had been in numerous rehabilitation facilities, and had been charged with felony criminal offenses. The father also alleged in the petition that “the physical and emotional health of the ... child [was] at risk.” On the petition, the father provided a Houston, Alabama, address for the mother (“the Houston address”). Along with the petition, the father submitted a partially completed “Order of Service and Return” form, Unified Judicial System Form C-15 (“the Form C-15”), indicating his intent to effect service upon the mother by special process server. The Form C-15 was stamped as being received in the juvenile-court clerk’s office on March 5, 2013. The Form C-15 listed the address for the mother as the Houston address. The completed return of service of the Form C-15 does not appear in the record; therefore, the record does not reflect whether the petition was personally served on the mother or whether the special process server left “a copy of the summons and the complaint at the [mother’s] dwelling house or usual place of abode with some person of suitable age and discretion then residing therein_” Rule 4(c)(1), Ala. R. Civ. P. However, a March 19, 2013, entry on the case-action summary indicates that the mother was purportedly served with the summons and the petition by a special process server on March 17, 2013.
On March 25, 2013, the mother, without the assistance of counsel, filed an answer to the father’s petition, in which she stated that she had abused drugs in the past, that she had been to various rehabilitation facilities, that she was not presently abusing drugs, that she had been charged with two felony offenses but that those charges had been dismissed, that the physical and emotional health of the child was not at risk, and that it would not be in the best interest of the child for her parental rights to be terminated. The mother further asserted in her answer: “I humbly admit that I have had issues with drug dependency in the past. However, today I am not under the influence of any drugs and I am in a very hopeful position. I am currently living in The Lovelady Center which is a transitional facility for both women and children.” (Emphasis added.)
On April 10, 2013, the juvenile court entered an order setting a final hearing on the merits of the father’s petition for May *777 29, 2013. The case-action summary indicates that the juvenile-court clerk mailed a copy of the juvenile court’s order to the mother on April 15, 2013. The record shows that the envelope containing the notice of the hearing was later returned to the juvenile-court clerk’s office as undeliverable. The record does not show the address used by the juvenile-court clerk for the mother in mailing the envelope. The returned envelope, which appears in the record, shows the mother as the intended recipient, but the recipient’s address block is obscured by a sticker affixed by the post office to notify the sender of the delivery failure. That notice, however, states that the delivery failed because the recipient had “no mail receptacle” and that the post office was “unable to forward.”
On May 9, 2013, the father issued subpoenas to various witnesses, directing them to appear to testify at the hearing scheduled for May 29, 2013. The father issued a subpoena to J.M., the mother’s father, and V.M., the mother’s mother. The address on the subpoenas for J.M. and V.M. is the same Houston address lifted for the mother on the petition and on the incomplete Form C-15. The return of service for the subpoenas for J.M. and V.M. indicate that they were personally served with the subpoenas on May 22, 2013, presumably at the Houston address.
The juvenile court held an ore tenus hearing on the termination petition on May 29, 2013. The mother did not appear at the hearing. At the commencement of the proceedings, the juvenile court noted on the record:
“Now, let me just say first of all that the parties that are here or the party that is here, [B.E.L.], the petitioner, is here this morning with his counsel.... I have appointed [a] guardian ad litem in this case, and he is present in the courtroom this morning. However, the respondent, [C.M.L.], is not present in the courtroom, but after checking with the clerk’s office, it appears that [C.M.L.] did, in fact, get notice of the setting of the hearing for today. In fact, I think the clerk’s office just told us that the notice was sent to her on April the 15th, and they did not receive a — they did not get a return back where she didn’t pick up the mail.”
The juvenile court proceeded to hear the testimony of the father; of B.L., who had custody of B.B., one of the mother’s other children, and who worked for J.M., the mother’s father; and of F.W., the paternal grandmother of B.B. When asked by the guardian ad litem about her knowledge of the mother’s current whereabouts, B.L. testified:
“Q. Where is she now?
“[B.L.:] She is in Lovelady Rehab.
“Q. She’s where? Where is that?
“[B.L.:] The Lovelady Rehab.
“Q. Where is that?
“[B.L.:] Birmingham.”
Concerning the mother’s location, the father testified as follows:
“THE COURT: .... [I]s [the mother] in trouble with the law again? I mean, the incident I understand the earlier testimony about showing up at some undesirable man’s place in Sumiton.
“[The father]: No, sir, I don’t believe she’s in trouble with the law. I think that they caught her messed up, and then that’s when, you know, she told [P.W., an adult relative of B.B.,] that she sold everything that she owned, all of her furniture, everything. And then at this time her mom and dad has completely cut her off. She had nothing. [J.M.] told me that her rent was paid up through March, I believe. He was paying her rent in Birmingham, and after that, since she didn’t have a vehicle — it *778 mysteriously came up stolen. She didn’t have any transportation or any income. That’s when she volunteered to go back-to rehab because it’s free living.
“THE COURT: And as far as you know, this rehab she’s in, she’s not there as a result of any kind of court order?
“[The father]: Not that time, no, sir.
“THE COURT: And do you know if she’s free to come and go, I mean, if you know?
“[The father]: All I know is what [P.W. and B.L.] — you know, since [B.L.] has had communication with her, and all I know is what [B.L.] told the Court today about she can leave anytime as long as she’s with another person in that rehab and that has transportation.
“THE COURT: And you said you know of at least three times she’s been back in Haleyville?
“[The father]: Yes, sir, to see [B.B.].
“THE COURT: To see [B.B.]. Has that been since she’s been back at Love-lady?
“[The father] Yes, sir. That’s been in the last three months. That’s been since all of her court with the custody case, with [B.B.] and North Carolina. That’s all happened since March.
“THE COURT: Have you had any discussions with her parents, or her for that matter, but with her parents about this particular proceeding and—
“[The father]: Yes. Yes, sir. Of course, [V.M.] — eveiy time it’s hard for me to trust them because they’ll tell me every time she gets out of rehab that they’re done, they’ve washed their hands. But I really feel like this time they have washed their hands with her.
“THE COURT: But I guess what I’m getting at — and I understand that. They’ve probably had all of course, it’s their daughter, but they’ve probably had all they can take. But you know, she’s obviously not here, but do you know — do you have any personal knowledge that she knows about this hearing, or at least that her parents know about this hearing?
“[The father]: Oh, yes, sir, because after [J.M.] got served with the subpoenas last week, he called me at 8:30 and said, ‘... I don’t disagree with what you’re doing. I support you, but I don’t see any need for me to be there. I’m supposed to be out of town that week.’ I said, ... ‘The reason why we’re at this stage right now is because of what you and [V.M. have] been doing for the last ten years of feeding her money left and right.’ I said, ‘My attorney thinks it’s very important, you being the father of her, and you’re willing to cut ties with her, for being here.’ They know exactly when the court was.”
At the conclusion of the testimony, during a colloquy with • the court concerning whether the mother had received notice of the hearing, the guardian ad litem stated:
“I support this petition. I expect this is not going to be the last time we’re going to be up here though. I think there’s a good chance of [this case] coming back, but I think the petition should be granted.”
On May 30, 2013,' the juvenile court entered a judgment terminating the mother’s parental rights to the child. In the judgment, the juvenile court stated that the
“[o]rder Setting Hearing in this cause for May 29, 2013 was filed in the Clerk’s Office on April 11, 2013. A copy of the Order Setting Hearing was mailed to the [mother], which was returned. Counsel for Petitioner mailed [the mother] a copy of the Order Setting Hearing, which was not returned.”
*779 At the bottom of the judgment, the juvenile court provided a street address to the Lovelady Center as the mother’s address.
On June 7, 2013, the mother, again without the assistance of counsel, filed a verified postjudgment motion seeking to vacate the judgment. In her verified motion, the mother averred:
“1. [The mother] ... did not receive notice of setting a termination hearing set for May 29,2013.
“2. [The mother] heard from her-parents that a hearing had been set in Marion County. On June 4, 2013, the Respondent/Mother drove to the Marion County court house and obtained a copy of the court file.
“3. The [mother] has a valid defense to the claims of the [father] in this case and her parental rights are not due to be terminated. The Respondent is entitled to notice of such a hearing and an opportunity to be heard regarding her parental rights.
“4. The [mother] is not guilty of actions as would warrant termination of her parental rights.”
The father did not file a response to the mother’s postjudgment motion, and the juvenile court denied the mother’s motion on June 11, 2013, without a healing. Thereafter, the mother filed a timely appeal to this court.
We first note that this court remanded this case to the juvenile 'court with instructions to make a determination concerning its jurisdiction over the subject matter of the father’s petition. In W.B.B. v. H.M.S., 141 So.3d 1062, 1065 (Ala.Civ.App.2013), this court held that a juvenile court did not have jurisdiction to enter a judgment on a petition to terminate parental rights under § 12-15-114, Ala.Code 1975, as it existed at the time of the judgment, unless the termination-of-parental-rights case arose out of one of the enumerated proceedings in § 12-15-114(a), Ala.Code 1975. Our legislature, in Act No. 2014-350, Ala. Acts 2014, however, has amended § 12-14-114(c), effective April 8, 2014, to provide that a juvenile court has exclusive original jurisdiction over proceedings to terminate parental rights regardless of whether the case arises out of the enumerated proceedings in § 12-15-114(a), namely, proceedings in which a child is alleged to have committed a delinquent act, to be dependent, or to be in need of supervision. Our legislature, in § 2 of Act No. 2014-350, expressly made the amendment of § 12-15-114(c) retroactive so that all termination judgments entered by a juvenile court between January 1, 2009 and April 8, 2014, “shall be deemed valid in absence of an adjudication on appeal to the contrary.” In our remand order, we noted that the jurisdiction of the juvenile court to enter the judgment in this case appeared to be impacted by Act No. 2014-350, and we remanded the case to the juvenile court for it “to determine ... whether [it] had jurisdiction to enter a judgment on the petition to terminate parental rights. Such a determination should include an opportunity for the parties to be heard on the issue whether through written pleadings or otherwise.” On remand, the juvenile court in this case entered an order finding that Act No. 2014-350 had cured any “defect or alleged defect of the [j]uvenile [c]ourt in this case” and that the court “ha[d] jurisdiction [to] terminate [the mother’s] parental rights.” On return to remand, we now proceed to address the issue raised in the appeal.
As this court has previously recognized:
“While a failure to answer a complaint is a common basis for the entry of a default, a default may be entered on other grounds, including ... failure to appear at trial. See Rule 55(a)[, Ala. R. *780 Civ. P.] (providing for entry of a default when a party fails to ‘otherwise defend’); Rule 55(b)(l)[, Ala. R. Civ. P.] (referring to the entry of a default for a party’s ‘failure to appear1); Triple D Trucking, Inc. v. Tri Sands, Inc., 840 So.2d 869 (Ala.2002) (note 2 and accompanying text).”
Sumlin v. Sumlin, 931 So.2d 40, 46 n. 2 (Ala.Civ.App.2005).
“Generally, ‘ “[a] trial court has broad discretion in deciding whether to grant or deny a motion to set aside a default judgment. In reviewing an appeal from a trial court’s order refusing to set aside a default judgment, this Court must determine whether in refusing to set aside the default judgment the trial court exceeded its discretion.” ’ Carroll v. Williams, 6 So.3d 463, 466-67 (Ala.2008) (quoting Zeller v. Bailey, 950 So.2d 1149, 1152 (Ala.2006) (citations omitted)). However,
“ ‘ “ ‘[w]hen the grant or denial of relief [from a default judgment] turns on the validity of the judgment, as under Rule 60(b)(4)[, Ala. R. Civ. P.], discretion has no place. If the judgment is valid, it must stand; if it is void, it must be set aside.. A judgment is void only if the court rendering it lacked jurisdiction of the subject matter or of the parties, or if it acted in a manner inconsistent with due process.’ ” ’
“Pirtek USA, LLC v. Whitehead, 51 So.3d 291, 295 (Ala.2010) (quoting Orix Fin. Servs., Inc. v. Murphy, 9 So.3d 1241, 1244 (Ala.2008), quoting in turn Insurance Mgmt. & Admin., Inc. v. Palomar Ins. Corp., 590 So.2d 209, 212 (Ala.1991) (emphasis added)).”
Cornelius v. Browning, 85 So.3d 954, 958 (Ala.2011).
On appeal, the mother contends that the juvenile court erred in denying her post-judgment motion to vacate the judgment on the basis that it had been entered in a manner that was inconsistent with due process because she had not received notice of the trial setting. We note that this is a contested case and that the mother appeared by filing an answer in which she denied that it would be in the best interest of the child for her parental rights to be terminated.
As this court has previously recognized, “[d]ue process of law should be observed in legal proceedings dealing with ‘ “ ‘ “the welfare of a minor child.” ’ ” ’ ”. M.E. v. Jefferson Cnty. Dep’t of Human Res., 148 So.3d 737, 740 (Ala.Civ.App.2014)(quoting other cases). This court has held:
“[Termination-of-parental-rights] proceedings strike at the very heart of the family unit. See Ex parte Beasley, 564 So.2d 950, 952 (Ala.1990). In a termination-of-parental-rights case, the state is seeking to irreversibly extinguish a fundamental liberty interest more precious than any property right, the right to associate with one’s child. Santosky v. Kramer, 455 U.S. 745, 758-59, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). Unlike a judgment divesting a parent of custody, a judgment terminating parental rights is immediate, permanent, and irrevocable. See C.B. v. State Dep’t of Human Res., 782 So.2d 781, 785 (Ala.Civ.App.1998) (‘termination of parental rights is an extreme action that cannot be undone; it is permanent’). Out of respect for those fundamental rights, due process must be observed. Santosky, supra.”
L.K. v. Lee Cnty. Dep’t of Human Res., 64 So.3d 1112, 1115 (Ala.Civ.App.2010)(emphasis added). In Ex parte Weeks, 611 So.2d 259 (Ala.1992), our supreme court explained:
“Procedural due process, as guaranteed by the Fourteenth Amendment to *781 the United States Constitution and Article I, § 6, of the Alabama Constitution of 1901, broadly speaking, contemplates the rudimentary requirements of fair play, which include a fair and open hearing before a legally constituted court or other authority, with notice and the opportunity to present evidence and argument, representation by counsel, if desired, and information as to the claims of the opposing party, with reasonable opportunity to controvert them.”
611 So.2d at 261. The Supreme Court of the United States has stated:
“An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance. But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met the constitutional requirements are satisfied. ‘The criterion is not the possibility of conceivable injury, but the just and reasonable character of the requirements, having reference to the subject with which the statute deals.’
“But when notice is a person’s due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected, or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes.”
Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314-15, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (quoting American Land Co. v. Zeiss, 219 U.S. 47, 67, 31 S.Ct. 200, 55 L.Ed. 82 (1911)) (citations omitted). See also Thomas v. Alabama Mun. Elec. Auth., 432 So.2d 470, 477 (Ala.1983) (“The method of notice chosen must give reasonable assurance of actually giving notice in light of other available means.”). In Jones v. Flowers, 547 U.S. 220, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006), the Supreme Court of the United States declared that a certified-mailed notice of a tax sale that has been returned as unclaimed does not constitute sufficient notice to the property owner and that “the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so.” 547 U.S. at 225.
In the present case, the record does not support a conclusion that the mother received sufficient notice of the hearing on the merits. The record shows that the father had initially provided the juvenile court with the Houston address for the mother. Because the completed return of service is not in the record to indicate whether the mother was served at the Houston ad4ress, there is nothing of record to support a conclusion that that address was where the mother was residing. The mother’s answer stated that she was living in the Lovelady Center, and testimony at the hearing on the merits indicated that She was still living at that facility at the time of the hearing. There is no indication in the record that her address was updated or changed in the State Judicial Information System between the date she answered the petition and the *782 date the notice of the trial setting was mailed. The Houston address also appears on the subpoenas issued to J.M. and V.M., the mother’s parents. If the original Form C-15 had been served upon a parent of the mother at the Houston address pursuant to Rule 4(c)(1), Ala. R. Civ. P., the testimony at the hearing showed that the mother had become estranged from her parents at the time the notice of the hearing was mailed to her. Additionally, although the judgment states that counsel for the father had also mailed the notice of the trial setting to the mother and that that notice had not been returned, there is no indication in the record as to which address the father’s counsel mailed the notice. Finally, and important to our analysis in view of the foregoing, the mother in her postjudgment motion contended, under oath, that she did not receive notice of the juvenile court’s trial setting. Nothing was filed in opposition to this sworn assertion, and no hearing was conducted (or requested) to contest the assertion.
Before a juvenile court can enter a judgment to terminate a parent’s rights to a child, a drastic measure that is the last and most extreme disposition afforded under the Alabama Juvenile Justice Act, § 12-15-101 et seq., Ala.Code 1975, due process requires that the parent receive notice of the proceedings. It is possible, had the mother received notice and even appeared at the hearing to defend against the petition, that the juvenile court would have received clear and convincing evidence sufficient to terminate the mother’s parental rights; however, we cannot say that, based on the limited facts of this case, the mother received notice of the hearing on the merits, as due process requires.
For the foregoing reasons, we conclude that the juvenile court’s judgment was entered in a manner that was inconsistent with due process. We therefore reverse the juvenile court’s judgment and remand the cause to the juvenile court for further proceedings.
REVERSED AND REMANDED.
THOMPSON, P.J., and PITTMAN, J., concur.
THOMAS, J., concurs in the result, with writing.
MOORE, J., concurs in the result, without writing.