[S. F. No. 5130.   In Bank.—December 2, 1910.]

POTRERO NUEVO LAND COMPANY (a Corporation), Appellant, v. ALL PERSONS CLAIMING ANY INTEREST IN OR LIEN UPON THE REAL PROPERTY HEREIN DESCRIBED, OR ANY PART THEREOF, Respondents.

ESTABLISHMENT OF TITLE—MCENERNEY ACT—BEACH AND WATER LOT IN SAN FRANCISCO—ACTION BY OWNER OF FEE.—The owner of the fee in a beach and water lot in the city and county of San Francisco, sold by the state under the act of May 18, 1853 (Stats. 1853, p. 19), subject to the ninety-nine-year term previously granted to the city of San Francisco by the act of March 26, 1851, may maintain an action under the so-called McEnerney Act (Stats. 1906, p. 78) for the purpose of establishing and quieting his title thereto.

ID.—POSSESSION BY HOLDER OF LEASEHOLD ESTATE. — The actual and peaceable possession of such a lot by a holder of the estate for ninety-nine years granted to the city of San Francisco is sufficient to authorize the owner of the remainder in fee to maintain the action under the provision of the McEnerney Act declaring that the relief provided therein may be obtained by "any person who claims an estate of inheritance, or for life in, and who is by himself or his tenant, or other person, holding under him, in the actual and peaceable possession of any real property."

ID. — INSUFFICIENT AFFIDAVIT ACCOMPANYING COMPLAINT — STATEMENT RESPECTING ACQUISITION OF PROPERTY.—In an action by the owner of the remainder in fee, an affidavit accompanying the complaint declaring merely "that said title to said property was sold and conveyed by the state of California to one John Bensley in 1855, and by him through divers mesne conveyances conveyed to said plaintiff, who is now the owner and holder thereof and has been for the last ten years and more," is not a sufficient compliance with the requirements of the McEnerney Act that such affidavit shall contain a full and explicit showing of the period during which the plaintiff has enjoyed his estate and of the person and persons "from whom obtained."

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Frank J. Murasky, Judge.

The facts are stated in the opinion of the court.

A. Everett Ball, for Appellant.

Page, McCutchen & Knight, C. Irving Wright, Thomas, Gerstle, Frick & Beedy, Stoney, Rouleau & Stoney, and F. J. Castlehun, for Respondents.

HENSHAW, J.—Appellant brought its action under the McEnerney Act to establish its title to certain beach and water lots in the city and county of San Francisco. By the act of March 26, 1851, the legislature granted to the city of San Francisco the use and occupation of said land for the term of ninety-nine years from the date of the act. Under the statute of May 18, 1853 (Stats. 1853, p. 219), commissioners were appointed who should sell, and did sell, the remaining interest of the state in these lots "after the expiration of the estate or term granted or mentioned in the act of 1851." Plaintiff is the purchaser of the fee disposed of by the state in subordination to the ninety-nine-year term, tenancy, or estate, and will not be entitled to actual possession as contradistinguished from any constructive possession, through the tenants of the ninety-nine-year term, until March 26, 1950. The court sustained a general demurrer to the complaint and dismissed the action. Plaintiff appeals and there are presented for consideration two questions: 1. Whether under the facts stated plaintiff had a possession sufficient to satisfy the requirements of the McEnerney Act (*Lofstad* v. *Murasky,* 152 Cal. 64, [91 Pac. 1008]), and so to entitle it to prosecute this action; and, 2. Whether the affidavit required to be filed with the complaint satisfies the act, which exacts that such affidavit shall fully and explicitly set forth "the character of his (plaintiff's) estate, right, title, interest or claim in and possession of the property, during what period the same has existed and from whom obtained."

The McEnerney Act was emergency legislation, containing certain novel features. It is not, of course, to be condemned for these reasons, but they are sufficient to demand of the

court scrupulous care in considering the provisions when the provisions themselves are attacked, or request is made that construction should be given to them. For these reasons a rehearing was granted from the Department decision.

1. A fundamental provision of the act is that it is available only to such person as "by himself or his tenant or any other person holding under him is in the actual and peaceable possession of the land." Can it be said that the relation of landlord and tenant, within the meaning of the McEnerney Act, exists between the owner of the reversionary fee and the owner of the ninety-nine-year term? In the very broadest acceptation of the meaning of the phrase "landlord and tenant" that relationship may be said to exist. But the question is whether it exists within the purview of the act. Thus Smith in Landlord and Tenant, after mention of the fact that under the common law every one is a tenant, since there is no allodial property, proceeds as follows:—

"I need not however tell you who must be all familiar with the use of those terms, that when we speak of landlord and tenant, even among lawyers, we use these words in a much narrower sense than that which I have just described. For instance, when we use the words landlord and tenant we do not mean to express the species of relation which subsists between the sovereign and a subject, for instance, the Duke of Wellington, who holds his estates of her Majesty by the service of presenting yearly a *banner* in lieu of all other rents and services; nor do we, I think, ever intend to express the sort of relation that exists between the reversioner and the particular tenants under a settlement where no rent is reserved or any service rendered, although a tenancy doubtless exists between them. For instance, if I convey lands to A in tail, keeping the reversion myself, there is no doubt that A becomes my tenant, though I reserve not a six pence of rent, nor ask for any covenant on his part to perform any of the ordinary duties of a tenant, and though he might destroy my interest the next day if so minded. But though as I have said, he is my tenant in strict law, this is not the sort of tenancy we mean when we use the words Landlord and Tenant. It is very difficult to express in terms the precise idea which we attribute to those words. But I think I am not far wrong in saying that, when we speak of Landlord and Tenant we have the

notion in our minds of a tenancy limited in point of duration within some bounds not so extensive as to render the Landlord's interest *practically* worthless and accompanied by some remunerating incidents to the reversion, such as a rent, or at all events a fine in lieu of one and also by certain obligations such as covenants, or, where the tenancy is not evidenced by some instrument under seal, agreements for the performance of the duties usually required from persons taking the description of property demised; and as these are the sort of tenancies which give rise to the great mass of practical questions involved in the law of Landlord and Tenant, it is to these that I intend almost exclusively to direct my remarks."

And, says Washburn (Real Property, 4th ed. 315): "This relation of landlord and tenant does not embrace that between sovereign and subject, nor between the reversioner and him who enjoys the particular estate on which the reversion depends, where no rent is reserved, although a kind of tenancy subsists between them."

A consideration of the acts of the legislature in disposing of these beach and water lots and of the decisions of this court in relation thereto make plain, we think, the fact that the relation of landlord and tenant in its true sense, even as used "among lawyers" does not exist. By the act of 1851 the state granted the use and occupation of these lands to the city and county of San Francisco for the term of ninety-nine years, with authorization to the city to sell and dispose of its holdings, requiring only that upon so doing, it should pay into the state treasury twenty-five per cent of the moneys received from such sales. Clearly in this there was no design of establishing between the state and the city the relation of landlord and tenant, and less design that that relation should exist between the state and any person to whom the city in turn might convey its interest. The subsequent act of 1853 merely empowered commissioners to sell the state's interest at public auction. And still less apparent is any intent or design to create such a relationship by substitution of the purchaser at the auction for the state of California. In *Holladay* v. *Frisbie*, 15 Cal. 635, a creditor of the city had attached the city's interest in certain beach and water lots, and the question arose as to how the city's title to the ninety-nine-year term was affected by the provision that it should pay one fourth

of the proceeds of the property to the state. It was declared that this provision created a mere contractual obligation upon the part of the city, and was not a condition to the grant, and that "the interest of the city in the beach and water lot property is a legal estate for ninety-nine years." Such a decision is foreign to the conception that the relationship of landlord and tenant existed between the state and the city. It is concluded, therefore, that the relation of landlord and tenant, within the meaning of the McEnerney Act, does not exist between the holder of the reversionary fee and the holder of the ninety-nine-year term in the beach and water lots of the city and county of San Francisco. And as the McEnerney Act contemplates "actual possession" either by plaintiff, by his tenant, or by some person holding under him, and as plaintiff's possession is based wholly upon that of his asserted tenant for years, since such tenancy does not exist, it necessarily follows that plaintiff does not come within the purview of the act and is not entitled, therefore, to maintain this action.

2. The affidavit accompanying the complaint in this instance declared merely "that said title to said property was sold and conveyed by the state of California to one John Bensley in 1855, and by him through divers mesne conveyances conveyed to said plaintiff, who is now the owner and holder thereof and has been for the last ten years and more." A requirement of a full and explicit showing of the period during which a plaintiff has enjoyed his estate, and a full and explicit showing of the person or persons "from whom obtained" is not met by the affidavit here presented. To say that one has owned an estate for ten years and more is not fully and explicitly showing how long in fact he has owned and enjoyed it. And a statement that one acquired title by "divers mesne conveyances" from one John Bensley, to whom the state conveyed the property in 1855, is not a full and explicit showing, description, or characterization of the person "from whom obtained." The provision of the statute requiring a full and complete statement in these particulars is manifestly designed for the benefit of the defendants, in enabling them, by verifying plaintiff's claim, to prevent fraud and safeguard their own rights. For these reasons a full and fair compliance with the provisions is a just exaction from every plaintiff.

For the foregoing reasons the judgment appealed from is affirmed.

Lorigan, J., concurred.

SHAW, J.—Concurring.   I concur in the judgment solely on the ground that the affidavit accompanying the complaint is defective as stated in the second part of the foregoing opinion.

Upon the question first considered in the opinion, I am unable to agree with the conclusion there reached.   The act is entitled: "An act to provide for the establishment and quieting of title to real property in case of the loss or destruction of public records."   The first section limits its application to instances where the public records of titles have been lost or destroyed by "flood, fire or earthquake."   Section 18 limits its application, in point of time, to proceedings begun under it before July 1, 1909, afterwards extended to January 1, 1911. It is well known that it was enacted to enable persons owning lands in San Francisco, where all the public records had been destroyed by the great fire of April, 1906, to obtain title of record, which would serve as a substitute for the destroyed record of the instruments on which the title depended.   By its precise terms, a part only of which is quoted in the foregoing opinion, it declares that the relief provided therein may be obtained by "any person *who claims an estate of inheritance,* or for life in, and who is by himself or his tenant, or other person, holding under him, in the actual and peaceable possession of any real property" in the county.   I agree that the procedure prescribed in the act should be followed closely.   But with respect to the persons who may obtain its benefits, I believe that it should receive a broad and liberal construction, one that would include every person who might be benefited by the relief provided, rather than one which would exclude any such person or class of persons.   The above language makes it applicable to the case of any person who claims an estate of inheritance and who, by himself or by another holding under him, is in actual and peaceable possession. The relation of landlord and tenant, in its narrow meaning, is not essential.   One may be in actual possession by another holding under him, without that other person being his tenant

in the ordinary sense and without the technical relation of landlord and tenant existing between them. One who holds a particular estate for years by grant, is, by a very common use of language, said to be holding under his grantor, although there is no obligation to pay rent in any form. In like manner, he would be holding under the grantee of the remainder. Such remainderman would be entitled to take advantage of the act to establish a record title to the remainder. If this were not so, then every landowner who may have conveyed to another an estate for years running beyond the time to which the act is extended, and who has not reserved any rent in the conveyance, is deprived of the benefits of the act.

Angellotti, J., and Sloss, J., concurred.

MELVIN, J., dissenting.—I dissent and adhere to the Department opinion previously prepared by me.

The following is the opinion of Department Two, adhered to by Justice Melvin, rendered on November 29, 1909:—

MELVIN, J.—An action was commenced under the so-called McEnerney Act to establish plaintiff's title to certain property in the city and county of San Francisco; to determine adverse claims to said realty; and for general relief. Upon motion the complaint was dismissed and this appeal is taken from the order of dismissal. The grounds of the motion were: 1. That the estate claimed by the plaintiff is not an estate for the establishment of title to which an action of this kind may be brought; 2. That plaintiff does not appear to be in the actual and peaceable possession by itself or its tenants holding under it, of the premises to which plaintiff seeks to establish its title; 3. That the affidavit of plaintiff does not set forth or show when or from whom the Potrero Nuevo Land Company acquired its title to the described premises.

The asserted title of plaintiff derived by mesne conveyances from one John Bensley was to an estate of inheritance in certain "Beach and Water Lots," the complaint alleging that the corporation plaintiff succeeded to such title after its sale by commissioners to Bensley under the act of May 18, 1853, and the supplemental statute of May 1, 1855.

By the act of March 26, 1851 (Stats. 1851, p. 307), the state granted to the city of San Francisco the "use and occupation" of certain "Beach and Water Lots" for the period of ninety-nine years from and after the passage of the act. By a subsequent statute of May 18, 1853 (Stats. 1853, p. 219), it was provided that commissioners to be appointed by the governor should sell the remaining interest of the state in these lots "after the expiration of the estate or term granted or mentioned" in said act of March 26, 1851. The act of 1855 wrought a change in the personnel of the board of commissioners. Plaintiff asserts title to the fee formerly held by the state subject to the tenancy for ninety-nine years of the city and those deriving title under it. Defendants claim the right to the "use and occupation" of various parcels of the property founded upon the act of 1851 and some of them also declare that they hold their portions of the land in fee.

The lower court in granting the motion to dismiss held that while plaintiff's estate was one of inheritance, it could not maintain the suit; that in addition to such an interest it must be in the actual and peaceable possession of the property; that the grantees of the city are not tenants of the state nor grantees of the state, and that, as no one will have possession under the reversionary right of the state until 1950, the plaintiff cannot now be in occupation of the property by its tenants or otherwise.

We find ourselves unable to agree with these conclusions. The state having disposed of the fee, subject to the use and occupation for ninety-nine years, its grantees or their ultimate successors in interest occupy the exact position of ownership formerly held by the state. Undoubtedly, the city and its successors to the estate for years hold the property subject to this reversionary interest. It makes no difference that their term is a very long one; they hold the land subject to the title in fee, precisely as they would possess it under a lease for a year or any other short term, because an estate for years is a leasehold interest and is personal property. (*Jeffers* v. *Easton, Eldridge Co.*, 113 Cal. 352, [45 Pac. 680]; *Summerville* v. *Stockton Milling Co.*, 142 Cal. 529, [76 Pac. 243].) To be sure there was no contract of rental between plaintiff and defendant, but the sale of the term for years under the act of March 26, 1851, was in itself a contract of rental and

the state (the landlord) was entitled under the act to twenty-five per cent of the money realized from such sale; but aside from this the relation of landlord and tenant may arise without rent reserved. Taylor in his work on Landlord and Tenant at section 14 says: "The relation of landlord and tenant subsists by virtue of a contract, express or implied, between two or more persons for the possession of lands or tenements." And Martindale on Conveyancing at section 293 says: "The relation of landlord and tenant may arise by implication or by the act or operation of law." Section 1 of the McEnerney Act provides that: "Any person who claims an estate of inheritance or for life in, and who is by himself or his tenant or other person holding under him in the actual or peaceable possession of any real property" may bring an action of this kind. (Stats. 1906, (Ex. Sess.) p. 78.) We see no logical escape from the doctrine that the relation of landlord and tenant exists; that the possession of the latter is that of the former; and that appellant has the right to maintain this action.

There is no merit in respondents' contention that the motion to dismiss was properly granted because appellant failed to disclose by its affidavit fully and explicitly "the character of his estate, right, title, interest or claim in, and possession of property, during what period the same has existed and from whom obtained." (McEnerney Act, sec. 5.) The affidavit did show "that said title to said property was sold and conveyed by the state of California to one John Bensley in 1855, and by him, through divers mesne conveyances, conveyed to said plaintiff, who is now the owner and holder thereof, and has been for the last ten years." This, we think, was amply sufficient for the purposes of the remedial act here considered.

The order from which this appeal is taken is reversed.

Henshaw, J., and Lorigan, J., concurred.