AMERICAN LAND CO. v. ZEISS.

(Circuit Court of Appeals, Ninth Circuit. October 9, 1911.)

No. 1,647.

1. JUDGMENT (§ 812*)—DESTRUCTION OF RECORDS—SUIT IN REM—CALIFORNIA STATUTE.

Under Act June 16, 1906 (St. Cal. [Ex. Sess.] 1906, p. 78), known as the "McEnerney Act," which provides that "whenever the public records in the office of a county recorder have been, or shall hereafter be, lost or destroyed, in whole or in any material part, by flood, fire or earthquake, any person who claims an estate of inheritance or for life in, and who is * * * in the actual and peaceable possession of any real property in such county, may bring and maintain an action in rem against all the world in the superior court for the county in which such real property is situate to establish his title to such property and to determine all adverse claims thereto," a judgment in favor of the plaintiff in such an action is conclusive between the parties, and when collaterally attacked, of the sufficiency of plaintiff's title and possession to sustain the action and of the affidavit required to be filed with the complaint setting out such title and possession, which affidavit is not jurisdictional.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1435–1442; Dec. Dig. § 812.*]

2. JUDGMENT (153*)—DESTRUCTION OF RECORDS—SUIT IN REM UNDER CALIFORNIA STATUTE.

Code Civ. Proc. Cal. § 473, providing that "when from any cause the summons in an action has not been personally served on the defendant,

the court may allow, on such terms as·may be just, such defendant or his legal representative, at any time within one year after the rendition of any judgment in such action, to answer to the merits of the original action," is applicable to actions brought under the McEnerney act of June 16, 1906 (St. Cal. [Ex. Sess.] 1906, p. 78), passed to meet the situation caused by the destruction of the records of titles in the San Francisco earthquake, and authorizing suits in rem to establish titles and determine adverse claims, and operates as a limitation of the time within which a judgment in such an action may be reopened.

[Ed. Note.—For other cases, see Judgment, Dec. Dig. § 153.*]

Appeal from the Circuit Court of the United States for the Northern District of California.

Suit in equity by the American Land Company against Louis Zeiss. Decree for defendant, and complainant appeals. Affirmed.

Action to declare a decree entered in the superior court of the city and county of San Francisco under the act of the Legislature of the state entitled "An act to provide for the establishment and quieting of title to real property in case of the loss or destruction of public records," approved June 16, 1906 (Stats. of Cal. 1906 [Ex. Sess.] p. 78), a cloud upon complainant's title to certain lots in the city and county of San Francisco, described in the decree, and that said cloud be removed, and the decree of the superior court be declared void and of no effect; and that it be adjudged that the complainant is the owner of said lots in fee simple.

This controversy relates to two adjoining lots of land situated in the city and county of·San Francisco in a block bounded by Clay, Commercial, Davis, and Drumm streets. The lots are described as City Slip and Water Front Lots Nos. 20 and 21, and with other lots of like character on the water front of San Francisco were originally owned by the state of California. By the act of the Legislature of the state entitled "An act to provide for the disposition of certain property of the state of California," passed March 26, 1851 (Stats. of Cal. 1851, p. 307), the use and occupation of a certain designated area on the water front, including the lots in controversy, were granted to the city and county of San Francisco for the term of 99 years from the date of the act. The appellee is the owner of this estate in the lots described, and entitled to their use and occupation until March 26, 1950, as the successor in interest of the city and county of San Francisco.

By the act of the Legislature·of the state entitled "An act to provide for the sale of the interest of the state of California in property within the water line of the front of the city and defined in and by the 'Act to provide for the disposition of certain property of the state of California,' passed March 26, 1851, approved May 18, 1853" (Stats. of Cal. 1853, p. 219), the Governor of the state of California was directed to appoint a board of commissioners to take possession of the property described in the act of March 26, 1851, and as soon as possible thereafter to sell at auction all the right, title, and interest of the state of California in and to said property. Under this act the interest of the state in this property was sold, and the appellant claims to have succeeded through mesne conveyances to the title of the state to the lots in controversy under that sale, and to be the owner of said lots in fee simple absolute. ·

It is a matter of common knowledge that the earthquake and fire of April 18, 1906, worked so great a destruction of the public records in San Francisco as to make it impossible to trace any title to real estate in the city with completeness or certainty, and legislation became necessary to enable holders and owners of real estate in the city to secure to themselves such evidence of title as would enable them not only to defend their possession, but to enable owners of real estate to enjoy and exercise the equally important right of disposition. Title, etc., Restoration Co. v. Kerrigan, Judge, 150 Cal. 289, 305, 88 Pac. 356, 8 L. R. A. (N. S.) 682, 119 Am. St. Rep. 199. In response to this immediate and supreme necessity, the Legislature of the state was convened

in special session in June, 1906, and met the requirements of the situation by passing, among other acts, an act providing for the establishment and quieting of title to real property by an action in rem against all the world in the case of loss or destruction of public records. The act was approved June 16, 1906 (Stats. of Cal. [Ex. Sess.] 1906. p. 78). All actions authorized by the act were required to be commenced before July 1, 1909. This provision of the act was subsequently extended to December 31, 1912. The act is commonly known as the "McEnerney act."

The appellee commenced an action under this statute on August 22, 1906, in the superior court of the city and county of San Francisco, alleging in substance that on the 18th and 19th of April, 1906, a material part of the public records contained in the office of the county recorder of the city and county of San Francisco was destroyed by fire: that on the 18th day of April, 1906. and at the time of filing the complaint, plaintiff therein was the owner of and in the actual and peaceable possession of the lots in controversy; that the estate, title, and interest of the plaintiff in and to said lots, pieces, and parcels of land, and each of them, was that of owner in fee simple absolute, free from all incumbrances, liens, defects, claims, or demands of any kind or nature whatsoever. The prayer of the complaint was that it be adjudged that the plaintiff was the owner of and entitled to the possession of said described lots of land, and each of them, in fee simple, and that no one else had any estate, right, title, interest, or claim in or to the same, or any part thereof, either legal or equitable, vested, future, or contingent.

Summons was issued upon this complaint, published in a newspaper and posted upon the property as required by statute, and, no person appearing or claiming any interest or lien upon any of the property in the complaint described, default of all defendants was entered, and on December 19, 1906, a decree was entered in favor of the plaintiff, adjudging that he was the owner in fee simple absolute and entitled to the possession of the land described in the complaint, and that no other person had any right, title, interest, or estate in and to the same, or any part thereof, either legal or equitable, present or future, vested or contingent.

On May 26, 1908, or one year and five months after the entry of the decree in the superior court in favor of the plaintiff in the case (defendant here) establishing his title to the lots in controversy, the complainant brought this suit in the United States Circuit Court claiming title to the lots as owner in fee simple absolute, but alleging in its complaint that the complainant was not then, and never had been. nor had its grantors or either of them ever been, in possession or entitled to the possession, use, or occupation of said land or any part thereof. The complaint further recited the action and proceedings in the superior court, setting forth the allegations of the complaint and the decree in that court in favor of the defendant, but alleging that said decree was void and of no force or effect and was made and obtained without due process of law and in violation of the fourteenth amendment to the Constitution of the United States, and that said superior court in said action and proceeding never had any jurisdiction over complainant's predecessors in interest, the persons holding the title during such proceeding, and that said court did not have or obtain jurisdiction to divest the right, title, interest. or estate of such persons. It was further alleged that in the action and proceeding in the superior court and in the obtaining, making, and entry of said decree therein, all things were done that were required to be done by the McEnerney act. To this complaint the defendant interposed a demurrer on the ground that the complainant had not in and by its bill made or stated any such cause as did or ought to entitle it to any such discovery or relief as therein sought or prayed for against the defendant. The court sustained this demurrer and ordered the bill dismissed. Whereupon complainant appealed to this court.

Charles Page, Edward J. McCutchen, Samuel Knight, and C. Irving Wright, for complainant.

Otto tum Suden, for appellee.

Garret W. McEnerney and Walter Rothchild, amici curiæ.

Before GILBERT and MORROW, Circuit Judges, and WOLV-ERTON, District Judge.

MORROW, Circuit Judge (after stating the facts as above). The complainant and appellant contended in the Circuit Court and in this court that the only question involved in the case was whether the act of the Legislature of the state of California providing for the establishment and quieting of title to real property by an action in rem against all the world in the case of loss or destruction of public records, approved June 16, 1906 (Stats. of Cal. [Ex. Sess.] 1906, p. 78), commonly known as the McEnerney act, was in violation of the fourteenth amendment to the Constitution of the United States; and whether by virtue of the decree rendered by the superior court of the city and county of San Francisco under this act establishing the title of the defendant to certain lots in said city and county the complainant had been deprived of its property without due process of law. In order that the question at issue should be so distinctly limited, the complainant and appellant admitted in this court:

"That no fraud is charged in the bill against Zeiss, the defendant, and that for the purpose of this case the court must assume that there was no fraud."

In view of the fact that the interests of very many persons of the city of San Francisco were affected by the act of the Legislature referred to, and it being of the utmost importance that the question of the validity of the act should be speedily and authoritatively determined, this court certified to the Supreme Court of the United States that it desired instructions upon the two questions above stated. American Land Co. v. Zeiss, 219 U. S. 47, 58, 59, 31 Sup. Ct. 200, 55 L. Ed. 82. In the Supreme Court the appellant objected to this certificate because it was too broad, as simply referring the whole case to that court, instead of presenting definite propositions of law for solution. The objection was not sustained; the Supreme Court deeming it without merit. It was the fact, however, that the constitutional question stated in the certificate in the form of two questions was the entire case presented to this court. The Supreme Court answered the questions of this court in the negative; that is to say, it held that the act of the Legislature was not in violation of the fourteenth amendment of the Constitution of the United States, and that the decree of the superior court entered in accordance with the requirements of that act establishing defendant's title to certain lots in the city of San Francisco did not deprive the complainant of its property without due process of law. The Supreme Court said further that as there was no claim that fraud, actual or constructive, had been employed by Zeiss in obtaining the judgment complained of, and the proceedings conformed to the California statute, the proceedings pursued in the state court were adequate to determine the issues involved in that case. Upon these instructions from the Supreme Court it only remained for this court upon the questions thus determined to affirm the decree of the Circuit Court sustaining defendant's demurrer to the complaint, and dismissing the bill.

[1] But the complainant has interposed a motion that this court

construe the act of the Legislature with respect to certain provisions and upon such construction reverse the decree of the Circuit Court and permit the complainant to amend its complaint. What are the material provisions of the act of June 16, 1906, which we are asked to construe?

The first is a provision of section 1, providing as follows:

"Whenever the public records in the office of a county recorder have been, or shall hereafter be, lost or destroyed, in whole or in any material part, by flood, fire or earthquake, any person who claims an estate of inheritance, or for life in, and who is by himself or his tenant, or other person, holding under him, in the actual and peaceable possession of any real property in such county, may bring and maintain an action in rem against all the world, in the superior court for the county in which such real property is situate, to establish his title to such property and to determine all adverse claims thereto. Any number of separate parcels of land claimed by the plaintiff may be included in the same action."

It is now contended by the appellant that the decree of the superior court is void because Zeiss, the plaintiff in that case, was not in the actual and peaceable possession of the property as required by the act. The provision of the act relating to "the actual and peaceable possession" of the claimant to real property entitled to bring the action therein mentioned were considered and construed by the Supreme Court of the state in Lofstad v. Murasky, 152 Cal. 65, 69, 91 Pac. 1008. That construction is binding upon this court. It was there held that, to constitute the possession described in the statute, "there must be an appropriation of the land by the claimant such as will convey to the community where it is situate visible notice that the land is in his exclusive use and enjoyment; and appropriation manifested by either inclosing it, or cultivating it, or improving it or adapting it to such uses as it is capable of."

There is no question but that the plaintiff had the possession of the lots as that possession is here defined by the Supreme Court; but the question of plaintiff's possession of the land in controversy under the statute was an issue in the case, and was determined by the superior court in favor of the plaintiff. That determination is conclusive on this court upon all matters of both law and fact. But it is said that in the recent case of Potrero Nuevo Land Co. v. All Persons, 158 Cal. 731, 112 Pac. 303, the Supreme Court of the state held that the purchaser of the fee disposed of by the state under the act of May 18, 1853, was entitled to bring an action under the McEnerney act to establish his title to the land. That appears to have been the opinion of a majority of the members of the court; but the question upon which the case was determined was the sufficiency of the affidavit required by section 5 of the McEnerney act to be filed with the complaint, showing fully and explicitly the character of plaintiff's estate and his possession of the property. It was held that the affidavit filed with the complaint in that case was defective in this respect, and because of such defect the judgment of the trial court dismissing the action was affirmed. The opinion of certain members of the court that the plaintiff holding the title derived from the sale made under the act of May 18, 1853, was entitled to bring the action to establish

191 F.—9

his title, had manifestly nothing to do with the conclusion reached by the court that his complaint was properly dismissed because of the defective affidavit relative to the character of his estate and his possession of the property. But, whatever may be the rights of the person holding the title in fee in this case (under the act of May 18, 1853), the plaintiff, Zeiss, holding an estate of inheritance (under the act of March 26, 1851), and being in the actual and peaceable possession of the lots, was entitled under the McEnerney act to bring the action to establish his title to the property, and, the court having jurisdiction of the case, its judgment is binding here.

It is further contended that the affidavit required by section 5 of the act was defective and the decree therefore void. Section 5 of the act provides as follows:

"At the time of filing the complaint, the plaintiff shall file with the same his affidavit, fully and explicitly setting forth and showing (1) the character of his estate, right, title, interest or claim in, and possession of the property, during what period the same has existed and from whom obtained; (2) whether or not he has ever made any conveyance of the property, or any part thereof, or any interest therein, and if so when and to whom; also a statement of any and all subsisting mortgages, deeds of trust, and other liens thereon; (3) that he does not know and has never been informed of any other person who claims or who may claim, any interest in, or lien upon, the property, or any part thereof, adversely to him, or, if he does know or has been informed of any such person, then the name and address of such person. If the plaintiff is unable to state any one or more of the matters herein required, he shall set forth and show, fully and explicitly, the reasons for such inability. Such affidavit shall constitute a part of the judgment roll. If the plaintiff be a corporation, the affidavit shall be made by an officer thereof. If the plaintiff be a person under guardianship the affidavit shall be made by his guardian."

The defects alleged in the affidavit are: (1) The affidavit filed with the complaint was verified five days before the complaint was filed in the superior court. (2) The affidavit was entitled in a nonpending proceeding. (3) The affidavit was utterly lacking in the averments required by the statute.

Whether the averments of the affidavit correspond to the state of facts existing on the date the complaint was filed, whether the title to the affidavit was material or immaterial, whether it was filed in a properly entitled case, and generally whether the averments of the affidavit were true or false, were questions for the superior court to determine; but they were not jurisdictional questions. It was not claimed that the defects of the affidavit were in aid of any fraudulent purpose; on the contrary, in defendant's brief in this court it is said:

"When appellee made his affidavit and when he took his decree in the superior court, he may or he may not have known of the existence of our interest."

Whether this affidavit was sufficient under the statute with respect to any of these particulars was a question for the superior court to determine upon the hearing of the case, and that it did so determine that question appears from the decree. It is there recited:

"And due proof now having been made to the court that the plaintiff herein had filed with his complaint the affidavit required by law, * * * and

the court having thereupon proceeded with the hearing and having heard the testimony of plaintiff, and documentary evidence having been introduced, and it now appearing to the court therefrom that all and singular the allegations contained in plaintiff's complaint herein and in the affidavit filed therewith are true, * * * it is therefore by this court adjudged and decreed that Louis Zeiss, the plaintiff, is the owner in fee simple absolute and entitled to the possession of the several parcels of land in the complaint on file herein and hereinafter particularly described."

How far is this decree conclusive of the rights of the parties? Is it open to attack in this case upon any of the objections now raised against the affidavit? The following provisions of the McEnerney act seem to answer these questions:

"Sec. 7. Upon the completion of the publication and posting of the summons and its service upon and mailing to the persons, if any, upon whom it is hereby directed to be so specially served the court shall have full and complete jurisdiction over the plaintiff and the said property and of the person of every one having or claiming any estate, right, title or interest, in or to, or lien upon, said property, or any part thereof, and shall be deemed to have obtained the possession and control of said property for the purposes of the action, and shall have full and complete jurisdiction therein which is provided for in this act."

"Sec. 11. The judgment shall ascertain and determine all estates, rights, titles, interests and claims in and to said property and, every part thereof, whether the same be legal or equitable, present or future, vested or contingent, or whether the same consist of mortgages or liens of any description and shall be binding and conclusive upon every person who, at the time of the commencement of the action, had or claimed any estate, right, title, or interest in or to said property, or any part thereof, and upon every person claiming under him by title subsequent to the commencement of the action. A certified copy of the judgment in such action shall be recorded in the office of the recorder of the county in which said action was commenced, and any party or the successor in interest of any party to said action may, at his option, file for record in the office of the recorder of such county the entire judgment roll in said action."

[2] The Supreme Court of the United States held in this case that in determining whether due process of law had been afforded other statutes applicable to the proceeding might be construed, and referred to the provisions of section 473 of the Code of Civil Procedure of the state, which provides:

"When from any cause the summons in an action has not been personally served on the defendant, the court may allow, on such terms as may be just, such defendant or his legal representative, at any time within one year after the rendition of any judgment in such action, to answer to the merits of the original action."

The court held that under the construction placed upon the statute by the Supreme Court of the state "it might well be held if it were necessary to do so as establishing a rule of limitation which it was within the power of the state to prescribe in view of the circumstances to which the limitation was made applicable."

The circumstances in San Francisco making statutes of the character here referred to applicable and necessary were similar to those that prevailed in Chicago after the great fire that destroyed a large part of that city in 1871. With respect to an Illinois statute of limitation, the Supreme Court of that state in Betrand v. Taylor, 87 Ill. 235, 238, said:

"It is, in effect, a statute of limitation, and, under the circumstances, was not unreasonable. It was demanded as a matter of safety in a great emergency. It was not calculated to take any reasonable being by surprise. It was known throughout the civilized world that a large part of the city of Chicago had been destroyed by. fire, and that the records of the courts and the records of deeds were all destroyed. This naturally commanded the attention of all reasonable persons everywhere, and called upon them to attend and see. what means would be adopted to mitigate the evils and dangers incident to the destruction. This legislation was not done in a corner, but before the observation of the civilized world. We cannot doubt the power of the General Assembly to pass the act."

This case is referred to by the Supreme Court of the United States in this case (219 U. S. 62, 31 Sup. Ct. 200, 55 L. Ed. 82), as aptly making application of the doctrine of the power of the state over titles to real estate. It is also applicable in the present·case in view of the fact that the suit in the Circuit Court was not brought until one year and five months after the entry of the decree in the superior court in favor of the defendant.

Under the provisions of the statute as construed by the courts, it is plain that the superior court of the state acquired full and complete jurisdiction over the plaintiff and the property, and of all persons of every kind having or claiming to have any right, title, or interest in said property; that it had jurisdiction to enter the judgment it did in the case; and that such judgment determines plaintiff's right of possession and use and occupation of the lot during the term for which the title was originally granted. Whether in a proper suit he might be held to hold the title in fee in trust for the complainant or be restrained to use the decree by way of estoppel against such a claim of title, this court is not called upon in this case to determine, but it would seem that in such a suit equity would have jurisdiction to grant relief against the injustice of the defendant holding as his own an absolute fee simple title acquired through inadvertence and mistake.

The judgment of the Circuit Court is affirmed.