[Civ. No. 3498. Third Appellate District.—July 6, 1928.]

SAMUEL B. STANLEY et al., Plaintiffs and Appellants, v. DELBERT WESTOVER, Defendant and Appellant.

Grant & Zimdars and William H. Bryan for Plaintiffs and Appellants.

J. S. Hutchinson and Walter Slack for Defendant and Appellant.

JAMISON, J., *pro tem.*—This action was brought by plaintiffs, respondents-appellants, hereinafter referred to as the Stanleys, against the defendant, appellant-respondent, hereinafter referred to as Westover, to set aside a judgment rendered by the superior court in and for the city and county of San Francisco, on October, 1907, wherein D. L. Westover was plaintiff and All Persons, etc., were defendants, numbered 2490, and adjudging the Stanleys to be the owners of the real property described in the complaint filed in this action.

Judgment in this action went for the Stanleys, that they were the owners of the said real property, subject to a lien thereon in favor of Westover for taxes paid by Westover that were assessed against the land in controversy during the years 1919 to 1924, inclusive, amounting to some $1,832.39, and the sum of $165 paid by stipulation, without interest, and the further sum of $3,424.85 paid by Westover

for taxes, sewer assessments and Twin Peak tunnel assessments on said real property up to May 14, 1917.

The Stanleys appeal from that portion of the judgment which awards Westover the $3,424.85, and Westover appeals from that portion of the judgment that decrees title in said real property to be in the Stanleys and from that portion of the judgment that fails to allow him additional amounts for taxes, assessments paid out by him on said real property, and $853.01 paid on execution sale in case of *Mason* v. *Stanley*.

. It is conceded that Fanny L. Stanley was the owner of the real property described in the complaint on February 1, 1897; that she died on July 8, 1898, leaving a will by which she devised the said real property to her two sons, Samuel B. Stanley and Joseph P. Stanley, and her daughter, Fanny Stanley Andreen, and appointed her said two sons her executors; that at the time of her death she resided in the city of San Francisco, and the said will was, during the year 1898, duly probated in the superior court of the city and county of San Francisco and said sons were appointed executors of said estate, and that said estate is still pending in said court.

On March 19, 1897, one F. M. Mason recovered judgment in the superior court of Mendocino County, against the said Fanny L. Stanley for the sum of $653.22, and thereafter, on April 8, 1897, duly filed a transcript thereof in the office of the county recorder of said city and county of San Francisco.

On May 19, 1898, said Mason assigned the said judgment to The Sonoma Lumber Company in partial satisfaction of a debt owing by Mason to said company; Westover at that time being a large stockholder of said company and the general manager thereof.

On May 21, 1898, said Westover had an execution issued on said judgment, which was levied upon said real property on June 20, 1898; that said real property was noticed for sale and was sold under said execution on July 20, 1898, and at said sale Westover purchased same, but payment of purchase money not having been made, the said execution was returned unsatisfied.

Another execution was issued on said judgment on March 11, 1899, was levied upon said real property on March 14,

1899, and advertised for sale for April 7, 1899, and at that time was sold to Westover for the sum of $853.01; and thereafter, on September 19, 1900, a deed for said property was duly executed by the sheriff under said execution sale to Westover, who held it as trustee for said Sonoma Lumber Company.

That in 1902 the said Sonoma Lumber Company was disincorporated and the claim of said company to said real property was distributed to said Westover.

It is manifest that the sale under this levy of the execution was wholly void and conveyed no title, for the reason that Fanny L. Stanley had died on July 8, 1898, and the levy of the execution under which the sale was made was after her death, to wit, on March 14, 1899, and the deed executed to Westover by the sheriff under said execution was a nullity. (Code Civ. Proc., sec. 686; Code Civ. Proc., sec. 1505; *Smith, Admr., etc.,* v. *Reed,* 52 Cal. 345.)

On July 13, 1907, Westover commenced an action in the superior court in and for the city and county of San Francisco being No. 2490 in which action said Westover was plaintiff and all persons claiming any interest in or lien upon the property described in the complaint or any part thereof, were defendants, and he therein prayed that he be declared the owner of the 11/24ths of the real property therein set forth.

This action purported to be instituted under the provisions of "An Act to Provide for the Establishment and Quieting Title to Real Property in case of Loss or Destruction of Public Records," approved June 16, 1906, and being commonly known as the "McEnerney Act."

It is this judgment that plaintiffs seek to set aside and cancel in this action.

Section 1 of said act provides that whenever the records in the office of the county recorder of any county shall be lost or destroyed in whole or in any material part by flood, fire or earthquake, any person who claims an estate of inheritance, or for life in, and who is, by himself or his tenant, or other person, in the actual and peaceable possession of any real property in such county may bring and maintain an action *in rem* against the whole world in the superior court for the county in which such real property is situate

to establish his title to such property and determine all adverse claims.

Section 2 of said act provided that the action shall be commenced by the filing of a verified complaint in which the party so commencing shall be named as plaintiff and the defendants shall be described as all persons claiming an interest in or lien upon the real property therein described, or any part thereof, and shall contain a statement of the facts enumerated in section 1 of the act, a particular description of the real property and a specification of the estate, title or interest of the plaintiff therein.

In his complaint filed in that action Westover stated that he claimed an estate in fee simple absolute, and by himself was in actual and peaceable possession of the said real property except that in his complaint it was described as 11/24ths of a strip of land described by metes and bounds and designated as being a portion of block No. 124, block 125 and block 126 of Sunset District.

Section 3 of said act provides that upon the filing of the complaint a summons must issue under the seal of the court, and among other things must set forth a particular description of the property.

Section 4 provides that the summons shall be published in a newspaper of general circulation published in the county in which the action is brought at least once a week for a period of two months, and that to each publication thereof there shall be appended a memorandum in substance as follows:

"The first publication of this summons was made in (here insert name) newspaper on the —— day of ——, A. D. (inserting the date)."

Section 5 of said act provides that at the time of filing his complaint the plaintiff shall file with the same his affidavit fully and explicitly setting forth and showing the character of his estate, right, title, interest or claim in, and possession of the property, during what period the same has existed and from whom obtained; that he does not know and has never been informed of any other person who claims or may claim any interest in or lien upon the property, or any part thereof, adversely to him, or if he does know, or has been informed of any such person, then the name and address of such person.

The court found that the evidence supports the findings that at the time Westover began said action he had no right, title, or interest of any kind in the real property in controversy in this action; that at the time he commenced said action he was not in the possession of the real property in controversy in this action, either actual or otherwise, and had never been in such possession; that prior to the commencement of this action he did know that others claimed an interest in the said real property, but at time of filing said action had forgotten same.

That prior to 1898 Joseph L. Stanley held a power of attorney from his mother, Fanny L. Stanley, and by virtue of said power of attorney had conveyed to Joseph Hutchinson as security for loans made to Fanny L. Stanley various properties of Fanny L. Stanley, including the real property which is the subject of this action in the instant case. Joseph Hutchinson was an attorney at law and acted as attorney for the said executors of the estate of Fanny L. Stanley.

That at the time of the death of Fanny L. Stanley, Westover knew that the title to said real property stood in the name of Joseph Hutchinson and during all other times until the death of Joseph Hutchinson, which occurred in 1910, knew that it so stood.

That some time between the year 1900 and 1903 Westover called on Joseph Hutchinson with reference to the payment of taxes assessed against the said real property, claiming that Hutchinson should pay the same, and was advised by Hutchinson that he was not responsible for the taxes, and shortly thereafter Westover called on Hutchinson again and sought to persuade him to pay them. And in the year 1906 or the early part of 1907 Westover called on Hutchinson at his office regarding the redeeming of said real estate from a sale of said real estate which had been made for the taxes of 1904. Joseph Hutchinson died in 1910, and at the time of his death had no interest in said real property.

That Westover knew prior to the sale under the first execution issued in the case of Mason against Fanny L. Stanley that the interest of said Fanny stood in the name of Hutchinson and was informed and had knowledge as early as 1902 of the claim of the Stanleys in and to said real property, and knew that Fanny L. Stanley died in 1898.

The court also found that neither Westover or the Sonoma Lumber Company ever filed any claim against the estate of Fanny L. Stanley.

The records of the deed by which Westover acquired his claim to said real property had not been destroyed by the fire of April 18, 1906; that said records were in the office of the county recorder of said city and county of San Francisco and were at all times accessible to the public, and maintained as public records in the office of said recorder and that Westover would have been able to state the dates and times and names of the parties who had deeded said property to him had he examined said records.

The court further found that Westover had forgotten that Hutchinson had any interest in said real property and that he did not have in mind the fact of the death of Fanny L. Stanley and the claims of plaintiffs herein to said real property and in making the aforesaid affidavit did not have the conscious intention of making any false statement in regard to said death and the said claims of the Stanleys.

It would appear from this last finding of the court in the instant case that at the time Westover commenced his action 2490 by filing his complaint and making the affidavit that his mind was in that convenient state where it could only contain one conscious train of thought, the self-centered thought that he would procure a decree to said real property under the McEnerney Act. And so obsessed was he with this single train of thought he forgot to examine the records to see whether or not the records of his claim had been destroyed. He forgot that he was not then, nor ever had been, in the possession of said real property actual or otherwise and forgot that Hutchinson or the Stanleys ever had any claim to said real property.

On October 21, 1906, said action 2490 came on for hearing before the court and Westover was sworn and testified that there were no improvements on said real property and that it was not fenced. Westover's attorney then asked permission of the court to have the hearing continued in order that Westover might put a fence around the said property, and said permission was granted and the hearing of said case was continued until such time as Westover could build said fence. Thereafter on October 29, 1906, Westover again appeared in court and testified that he had enclosed said

real property with a fence, and thereupon judgment was rendered in his favor.

We have here Westover's own sworn statement that when he filed his complaint and commenced his action No. 2490 that he was not in possession of said real property actual or otherwise, and that he had no possession of any kind of said real property until about two and one-half months after he had filed his complaint in said action.

In the case of *Lofstad* v. *Murasky*, 152 Cal., at page 70 [91 Pac. 1011], the court, after commenting upon what was meant by the words "actual possession" as used in the McEnerney Act, said, "And upon the hearing before the court for the purpose of obtaining the decree authorized by the act he (plaintiff) must prove actual possession of the property at the time of filing his complaint as it is defined by these authorities."

To authorize the bringing of an action under the McEnerney Act the public records of the county must be lost, or destroyed in whole or in part by flood, fire, or earthquake, and the party bringing the action must, at the time of bringing the action be in the actual and peaceable possession of the real property.

These requirements are jurisdictional and unless each of them exists at the time the action is commenced no right arises to bring an action under this act.

It is a settled rule that a plaintiff's right of action must exist when he commences his action, for the rights of the parties are to be judged by the conditions existing at the time the action was begun. (1 Cal. Jur., p. 377; *Westerfield* v. *New York Life Ins. Co.*, 129 Cal. 84 [58 Pac. 92, 61 Pac. 667].)

At the hearing of the said case No. 2490 on October 21, 1906, when it appeared by the testimony of Westover that when he commenced his said action against All Persons, etc., he was not in the actual possession of the real property described in his complaint, the court should have dismissed the said case for want of jurisdiction.

However, it is the well-settled rule in this state that in an action in equity brought for the purpose of vacating a judgment, valid on its face, on the ground of fraud, such fraud to constitute a ground for equitable relief must be

extrinsic or collateral to the question examined or determined.

Aside from the question of fraud in procuring the judgment in this case, we think that the judgment is void on its face for the following reasons:

1. For the reason that the complaint in said action No. 2490 did not set forth a particular description of the real property, nor was such particular description set forth in the summons or in the *lis pendens*.

The description of the real property as it appeared in the complaint filed by Westover in case No. 2490 described it as being block 1024, 1025, and 1026 in the Sunset District, whereas the correct description of said real property was and is Outside Lands blocks 1024, 1025 and 1026.

The court found upon this matter as follows:

In all papers, documents, records, and proceedings where description of the property is made in action 2490 the premises hereinbefore referred to were erroneously described in the following respects, to wit: said premises were described as being in portions of block 1024, 1025, and 1026 of the Sunset District, whereas a correct description of said lands should be a portion of Outside Lands blocks 1024, 1025, and 1026.

2. Section 5 of the McEnerney Act provided that the affidavit shall be a part of the judgment-roll. This section further provides that the affiant shall set forth fully and explicitly "the character of his estate, right, title, interest or claim in the possession of the property, during what period the same has existed and from whom obtained." And it further provides "that if the plaintiff is unable to state one or more of the matters herein required he shall set forth and show fully and explicitly the reason for such inability."

In the attempted compliance with said last-named requirement, plaintiff set forth in his said affidavit the following: "That all deeds and records in the possession of the said plaintiff were destroyed by fire on or about the 19th day of April, 1906, and for that reason said plaintiff is unable to state the dates and times or the names of the parties who deeded said real estate described in the complaint, and hereinafter described to plaintiff. That said plaintiff has been in actual, open, notorious and peaceable possession of said real estate for many years."

In the case of *Potrero Nuevo Land Co.* v. *All Persons*, 158 Cal. 731 [112 Pac. 303], the court held the affidavit to be insufficient which stated: "That the title to the property was sold and conveyed by the state of California to one John Bensley in 1855 and by him through divers mesne conveyances conveyed to plaintiff who is now the owner and holder thereof and has been for the past ten years." Commenting thereon the court said:

"To say that one has owned an estate for ten years and more is not fully and explicitly showing how long in fact he has owned and enjoyed it. And a statement that one acquired title by divers mesne conveyances from one John Bensley, to whom the state conveyed the property in 1855 is not a full and explicit showing, description or characterization of the person from whom obtained.

"The provisions of the statute requiring a full and complete statement in these particulars is manifestly designed for the benefit of the defendants, in enabling them, by verifying plaintiff's claim, to prevent fraud and safeguard their own rights. For these reasons a full and fair compliance with the provisions is a just exaction from every plaintiff."

██ And merely stating, as Westover did in his affidavit, that the reason he cannot state the dates and times and parties from whom he obtained said real property is because all the deeds and records in *his* possession were destroyed by fire on April 19, 1906, does not show fully and explicitly the reason for such inability.

3. Section 4 of the McEnerney Act provides that the summons shall be published once a week for a period of two months and that to each publication there shall be appended a memorandum in substance as follows:

"First publication of this summons was made in (here insert name) newspaper on the —— day of ——, A. D. —— (inserting date)."

The proof of publication filed in case 2490 shows that only to the first of the eight weekly publications was the said memorandum attached.

██ Because the act is remedial and should be liberally construed to effect the purpose contemplated does not dispense with the necessity of substantially complying with its requirements. (22 Cal. Jur., p. 651.)

In his concurring opinion in the case of *Potrero Nuevo Land Co.* v. *All Persons,* 158 Cal., at page 736 [112 Pac. 307], Shaw, Justice, said: "I agree that the procedure prescribed by this act should be followed closely."

4. It appears from an examination of Westover's complaint filed in action 2490 that he did not therein set forth that he was in the actual and peaceable possession of the 11/24ths of the real property described therein as portions of block 1024, 1025, and 1026 of the Sunset District.

His allegations in said complaint in that respect are as follows: "The plaintiff claims an estate in fee simple absolute and by himself is in the actual and peaceable possession of all those certain lots, pieces and parcels of real property situate, lying and being in the city and county of San Francisco, state of California, and described as follows: (here follows description of real property not involved in this action).

"That plaintiff is the owner of an undivided eleventwenty-fourths (11/24) interest in the following described property in fee simple absolute"; then follows a description by metes and bounds of each of the three tracts in blocks 1024, 1025, and 1026 in Sunset District, and nothing further is stated in the complaint regarding the possession of Westover.

It will be noted that Westover does not join the two descriptions by the conjunction "and." That is to say, he does not set forth that he is the owner and in possession of certain lots, describing them, and of certain other lots, describing them. But on the contrary he says that he claims an estate in fee simple absolute and by himself is in the actual and peaceable possession of certain lots, describing them. Then he starts anew and says that he is the owner of 11/24ths of the following described property in fee simple absolute.

■ Westover claims that the Stanley's cause of action is barred by the provisions of sections 318, 319, and 320, of the Code of Civil Procedure, upon the theory that the Stanleys had not been possessed of the real property within five years prior to the commencement of their action.

The court found, and rightfully so, that the Stanleys had been in possession of said real property since a date

long prior to 1896 and up to the date that this action was tried.

The court further found that the action under consideration was not barred by the provisions of section 338 of said code. Nor by section 343 of said code.

The instant action was commenced on February 20, 1914, the Stanleys having no knowledge whatever of the rendition of the judgment in action No. 2490, or of any claim of Westover to said real property by reason thereof until April, 1913.

■ Westover also claims that the Stanleys are barred from bringing and maintaining this action by reason of their laches; that as early as 1902 the attorneys representing the Stanleys had knowledge of the existence of the sheriff's deed executed to him as trustee of the Sonoma Lumber Company under the execution sale upon the judgment of *Mason* v. *Fanny L. Stanley,* and knew that all rights acquired under said deed by said company had been distributed to Westover. That said deed was of record and imparted notice of its existence to the Stanleys.

But the fact is that Westover was, at no time, ever in the possession of said property, and the only thing he had ever done was to pay the taxes accruing against it.

In the case of *Secret Valley Land Co.* v. *Perry,* 187 Cal. 425 [202 Pac. 451], the court said: "One cannot acquire title to the land of another by paying the taxes on it. Nor will a claim of title under a void deed, though recorded, ripen into a fee by lapse of time, nor will limitation run against the owner of record in favor of a claimant not in possession, nor is it incumbent on the owner to sue for cancellation of a void deed, or take any steps to remove a cloud upon his title. If he desires to have the cloud removed the law affords a remedy, but he is not compelled to go to that expense, and his failure to do so cannot be considered laches, nor will it operate as an estoppel against him."

■ Westover also claims title to the said real property by adverse possession.

One of the elements necessary to constitute adverse possession is that the adverse claimant must have been in the actual possession of the real property for a continuous period of five years.

In the instant case the court found that Westover had never been in the possession of said real property either actual or otherwise.

As this finding is supported by the evidence it disposes of Westover's claim that he has obtained title to the real property in controversy by adverse possession.

■ Westover set up his answer that his grantor the Sonoma Lumber Company paid, as purchasers of the said real property under the execution sale upon the judgment of *Mason* v. *Fanny L. Stanley*, the sum of $853.01, which was applied in satisfaction of said judgment, that said company paid the taxes on said real property for the years 1899, 1900, and 1901 and that since that last-named date Westover has paid the taxes and assessments assessed against said real property, and he asked that in the event that it be adjudged that the Stanleys are the owners of said real property he be reimbursed for said sums so paid out.

It appears that the judgment rendered in the case of *Mason* v. *Stanley* was a valid judgment. That it was satisfied by the amount bid by Westover at the execution sale had under the said judgment.

The Stanleys set forth in their complaint facts showing that the said execution sale was void and the deed executed to Westover thereunder was a nullity, and in their prayer for relief asked that their title to said real property be quieted against all claims of Westover to said property. In other words, they attacked the validity of said deed and asked that it be held to be void.

They have come into equity asking equitable relief which, if granted, will invalidate the aforesaid sale under execution and deed executed thereunder.

Upon the principle that he who seeks equity must do equity, the general rule, according to the weight of authority, is that an execution sale will not be set aside at the instance of the debtor without refunding to the purchaser his purchase money which has been applied to the benefit of the debtor. (10 R. C. L., p. 1323.)

■ The failure of Westover to present his claim against the estate of Fanny L. Stanley did not operate as an extinguishment of the debt. (*Whitmore* v. *San Francisco Savings Union*, 50 Cal. 149; *Bull* v. *Coe*, 77 Cal. 63 [11 Am. St. Rep. 235, 18 Pac. 808].)

In the case of *Keohane* v. *Keohane*, 33 Cal. App., at page 408 [176 Pac. 387], Lennon, C. J., said: "A party seeking to quiet his title to the realty or remove a cloud thereon will as a condition precedent to relief be compelled to do equity. A court of equity setting aside a judicial sale under a void execution as a cloud on title should decree that the purchase money be refunded."

Westover claims that having paid all taxes and assessments assessed against said real property, he should, in the event that the Stanleys are adjudged to be the owners of said real property, be reimbursed for same.

No case has been called to the attention of the court where the owner of property has been required to reimburse one who has paid the taxes accruing against it, as a condition of quieting his title except in this case where he seeks to remove a tax deed or sale as a cloud on his title or to obtain a judgment which would in effect invalidate such sale or deed.

It is a general rule that there can be no recovery for the voluntary payment of the debt of a third party without request and with no promise of repayment by the party whose debt is paid. (*McGlew* v. *McDade*, 146 Cal. 553 [88 Pac. 695]; *Huddlestone* v. *Washington*, 136 Cal. 514 [69 Pac. 114]; *Curtis* v. *Parks*, 55 Cal. 106.) In the case of *Iowa Homestead Co.* v. *Valley Railway Co.*, 84 U. S. 153 [21 L. Ed. 622, see, also, Rose's U. S. Notes], the court held that while the taxes on the lands involved were the debts of the defendants, their refusal or neglect to pay them did not authorize the contestant to make them its debtor by stepping in and paying the taxes for them without being requested so to do. That if the appellants, owing to their great confidence in their title, have risked too much, it is their misfortune, but they are not on that account to have the taxes voluntarily paid by them refunded by the successful party to the suit.

Pomeroy in his work on Equity Jurisprudence in interpreting the maxim that he who seeks equity must do equity said in section 385: "That whatever be the nature of the controversy between two definite parties, and whatever be the nature of the remedy demanded, the court will not confer its equitable relief upon the party seeking its interposition and aid, unless he acknowledge and concede, or will admit and provide for, all the equitable rights, claims and

demands justly belonging to the adverse party and growing out of or necessarily involved in the subject matter of the controversy.''

In the instant action the payment of the taxes did not grow out of, nor was it necessarily involved in, the subject matter of the controversy.

It was projected into the case by the answer of Westover and partakes of the nature of a counterclaim.

The payment or nonpayment of taxes were foreign to the issues that were involved in the case now under consideration.

It is true that the court found that the taxes were paid by Westover based upon the facts heretofore found; that he claimed to be the owner of said property and not in pursuance of any scheme or design to defraud plaintiffs or anyone. But in the case of *Iowa Homestead Co.* v. *Valley Railway Co., supra,* the court said: ''It seems that during this litigation the appellants paid the taxes on a portion of the land, and claim to be reimbursed for this expenditure in case the title is adjudged to be in the defendants on the ground that they paid the taxes in good faith and in ignorance of the law. But ignorance of the law is no ground for recovery, and the element of good faith will not sustain an action where the payment has been voluntarily made without any request from the true owners of the land and with full knowledge of the facts.''

Under our view of the case the court erred in that portion of its judgment which required the Stanleys to reimburse Westover for any taxes or assessments upon said real property that accrued and were paid by him prior to the date of the stipulation of November 24, 1919.

That portion of the judgment of the trial court to the effect that the Stanleys are the owners of the real property in controversy and quieting their title to same against the claims of Westover is affirmed, and that portion of the said judgment that decrees the payment by the Stanleys to Westover of the taxes and assessments accruing against said real property and paid by him prior to the date of the stipulation of November 24, 1919, is reversed, and the trial court is hereby directed to enter judgment in favor of Westover for the amount of all taxes paid by him under the stipulation of November 24, 1919, also for the sum of $165 paid by him

pursuant to stipulation of the parties, and also for the aforesaid sum of $853.01, being the amount bid by him at the execution sale under the judgment in the case of *Mason* v. *Stanley*, with interest on said last-named sum of $853.01 from April 7, 1899, at the rate of seven per cent per annum, and that said amounts so adjudged in favor of said Westover be made a lien on the real property involved in this controversy.

Hart, Acting P. J., and Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on August 4, 1928, and a petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 4, 1928.

All the Justices concurred.